JOHN A. FITZPATRICK, Respondent, *v.* INTERNATIONAL RAILWAY COMPANY, Appellant.

128

(Argued October 21, 1929; decided November 19, 1929.)

*Edward E. Franchot* and *John J. K. Caskie* for appellant. Prejudicial error was committed by the trial court in charging that the burden of proving contributory negligence was upon the defendant. (*Wagner* v. *International Ry. Co.*, 232 N. Y. 176; *Morrow* v. *Canadian Pac. Ry. Co.*, 21 Ont. App. 149; *Forwood* v. *Toronto*, 22 Ont. 351; *Kiefer* v. *Grand Trunk R. Co.*, 12 App. Div, 28; 153 N. Y. 688; *Wooden* v. *Western N. Y. & P. R. Co.*, 126 N. Y. 10; *Colucci* v. *Lehigh Valley R. R. Co.*, 121 Misc. Rep. 758; *Sapone* v. *N. Y. C. & H. R. R. R. Co.*, 130 Misc. Rep. 755; *Sackheim* v. *Pigueron*, 215 N. Y. 62; *Campbell* v. *N. Y. Evening Post*, 245 N. Y. 320; *Johnson* v. *Phœnix Bridge Co.*, 197 N. Y. 316; *Ackerman* v. *Ackerman*, 200 N. Y. 72; *Sharrow* v. *Inland Lines*, 214 N. Y. 100; *Hutchinson* v. *Ward*, 192 N. Y. 380; *Jacobus* v. *Colgate*, 217 N. Y. 235.) There was error in the manner in which the plaintiff was permitted to conduct his case in respect of the proof of the law of the Province of

Ontario, and in the manner in which the jury was permitted to pass upon questions of law. (*Russian Reinsurance Co.* v. *Stoddard*, 211 App. Div. 132; *Mance* v. *Hossington*, 205 N. Y. 33; *Rothenberg* v. *Filarski*, 30 Misc. Rep. 610; *Matter of Affleck*, 155 App. Div. 339; *Matter of Atkinson*, 192 App. Div. 427; Baylies Trial Practice [2d ed.], 292; *Anderson* v. *R., W. & O. R. Co.*, 54 N. Y. 334; *Church* v. *Howard*, 79 N. Y. 415; *German Am. Bank* v. *Slade*, 15 Misc. Rep. 29; *Knupfle* v. *Knickerbocker Ice Co.*, 84 N. Y. 488; *Fluker* v. *Ziegele Brewing Co.*, 201 N. Y. 40.) There was no warrant for the court's decision that disputes as to correctness of legal principles and their application to the particular facts should be submitted to the jury for its determination. (*Bank of China* v. *Morse*, 168 N. Y. 458; *Hanna* v. *Lichtenhein*, 225 N. Y. 579; *O'Rourke* v. *Cunard Steamship Co.*, 169 App. Div. 943; *Reilly* v. *Steinhart*, 174 App. Div. 265.) The court erred in permitting the jury to construe and determine the meaning of a written instrument, namely, the order of the Ontario and Municipal Board. (*Bank of China* v. *Morse*, 168 N. Y. 458; *Hanna* v. *Lichtenhein*, 225 N. Y. 579; *O'Rourke* v. *Cunard Steamship Co.*, 169 App. Div. 943; *Reilly* v. *Steinhart*, 174 App. Div. 265; *Ufford* v. *Spaulding*, 156 Mass. 65; *Compania Transcontinental DePetrolio* v. *Mexican Gulf Oil Co.*, 292 Fed. Rep. 846.)

*Hamilton Ward* and *Harold J. Tillou* for respondent. The trial court committed no error in placing the burden of proof of contributory negligence upon the defendant. (*Davidson* v. *Schermerhorn*, 1 Barb. 480; *Davidsen* v. *Morse Dry Dock Co.*, 235 N. Y. 439; *Central Vermont R. R. Co.* v. *White*, 238 U. S. 507; *Inland, etc., Co.* v. *Tolson*, 139 U. S. 551; *Robins Drydock* v. *Dahl*, 266 U. S. 449; *Kiefer* v. *Grand Trunk R. R. Co.*, 12 App. Div. 28; *Amour & Co.* v. *Carlas*, 142 Fed. Rep. 721; *Jacobus* v.

*Colgate,* 217 N. Y. 235; *Ackerman* v. *Ackerman,* 200 N. Y. 72; *Shannon* v. *Inland Lines,* 214 N. Y. 100; *Danser* v. *Gulf, etc., Co.,* 45 Sup. Ct. Rep. 613; *Hutchinson* v. *Ward,* 192 N. Y. 380; *Campbell* v. *New York Evening Post,* 245 N. Y. 320.) No error was committed in respect to the proof of the law of the Province of Ontario or in the manner in which the jury was permitted to pass upon the same. (Civ. Prac. Act, § 391.)

CRANE, J. The International Railway Company is a domestic corporation owning, maintaining and operating an electric street surface railroad in various parts of the United States and Canada, and at the time here in question owned and maintained a line of tracks upon the westerly side of the Niagara Gorge at Niagara Falls, Ont. Under an agreement with the Niagara Gorge Railroad Company these tracks were used by this latter company for the operation of its own cars in running a scenic road around the Niagara Gorge. The duty of maintaining the tracks and roadbed rested upon the International Railway Company, a duty regulated by the public authorities, as will hereafter appear. In the operation of its scenic route, the Niagara Gorge Railroad Company, at times, ran two cars hitched together, in charge of a conductor and an assistant, besides the motorman. The first car contained the power machinery, the second car was a trailer, partially controlled by the assistant who sat in the first seat of the car to operate the brakes. These were open cars with side steps which could be raised and lowered. For about a mile of this railway on the west side the cars ran very near to the edge of the gorge so that the passengers had an opportunity of seeing the wonders of nature below. The poles maintained by the defendant for its overhead wires were also on the gorge side of the railroad for this mile, that is, they were between the tracks and the edge of the gorge, at some places so near to the cars as they passed

that the steps were raised and the guard rail lowered to protect the passengers from getting out on that side or from falling out.

The plaintiff was a young man, twenty-three years of age, attending college at the University of Pennsylvania, who, in the summer time, obtained employment with the Shredded Wheat Company of Niagara Falls to obtain money to pay his college expenses. Saturdays and Sundays, the rush days, he got a job with the Niagara Gorge Railroad Company to act as assistant to the conductor in charge of the brake on the trailer or rear car of the two that made the trip around the gorge. On August 23d, 1925, as the cars were running through this narrow belt of a mile or more near the edge of the gorge on the westerly side, the conductor in charge of the cars, a man named Culp, was standing on the rear platform of the forward car near the right-hand edge trying to adjust the trolley pole or hold it in place as the cars speeded round a curve. He was bending out backwards toward the side of the car when his head came in contact with a pole of the defendant company sweeping him off the car. The plaintiff, sitting almost directly behind him in the front seat of the trailer near the brake handle, immediately sprang up and instinctively grabbed for the conductor to save him, if possible, with the result that both Culp and Fitzpatrick were carried off and beneath the cars, Fitzpatrick being mutilated for life.

We need not dwell at length upon the negligence of the defendant as it became a question of fact not reviewable in this court. The points which we must touch upon do not involve the defendant's negligence. The International Railway Company maintained the pole causing the damage as one of its overhead line poles within a distance of about twelve inches from the step of the trolley cars as they went by. This was unnecessary as there was a distance of about sixteen and one-half

feet between the outside rail and the edge of the gorge, in any portion of which the pole might have been placed. By section 104, chapter 185 of the Revised Statutes of Ontario, 1914, the Railway and Municipal Board of the Province of Ontario was given power to make orders and regulations regarding the maintenance and operation of these lines of railway. By order of May 26th, 1916, the Board made the following order:

" (14) That the railway from Queen Street in the Village of Queenston to the river dock be reconstructed with a safety switch, and with altered grades and curves, in accordance with the plan approved by the Board, and filed in the office of the Board, a copy of which has been delivered to the company;

" (15) Where the trolley wire is carried on span wires, the trolley poles supporting the span wires shall be erected and maintained at a minimum distance of seven feet from the centre line of the nearest track, such distance to be measured to the face of the trolley pole nearest the track; provided that where this is impracticable owing to the proximity of the railway to the cliff the Board may permit a trolley pole or poles to be erected nearer the centre line of the nearest track; "

The legal experts called to testify as to the foreign law differed in their views as to the application of these rules and ordinances under the Ontario law, to which reference will be made later. The fact that the International Railway Company was bound to obey these rules, and could have placed its pole further back from the railway, was, without doubt, the chief element of the defendant's negligence.

With this brief statement of the nature of this case, we will pass to the consideration of the two main points raised by this appeal.

Chapter 32 of the Laws of Ontario, 1924, known as the Contributory Negligence Act, provided as follows:

" 3. In any action or counterclaim for damages here-

after brought, which is founded upon fault or negligence, if a plea of contributory fault or negligence shall be found to have been established, the jury, or the judge in an action tried without a jury, shall find:—

"*First:* The entire amount of damages to which the plaintiff would have been entitled had there been no such contributory fault or neglect;

"*Secondly:* The degree in which each party was in fault and the manner in which the amount of damages found should be apportioned so that the plaintiff shall have judgment only for so much thereof as is proportionate to the degree of fault imputable to the defendant.

"4. Where the judge or jury finds that it is not, upon the evidence, practicable to determine the respective degrees of fault the defendant shall be liable for one-half the damages sustained."

The trial judge charged that the burden of proving contributory negligence was upon the defendant and submitted to the jury questions of fact in accordance with this Ontario statute, whereby the jury found the plaintiff guilty of contributory negligence to a degree of ten per cent.

On this appeal the appellant insists that this charge, in reference to the burden of proof, is wrong, for the reason that the law of the State of New York should govern and not that of the Province of Ontario; it claims that the burden of proof of freedom from contributory negligence, in a common-law action such as this, rests upon the plaintiff in New York State and that as the rule regarding the burden of proof is but a rule of procedure and not a matter affecting a substantial right, the law of the forum and not the law of the place of occasion should govern. In this the appellant is wrong according to reason and authority.

While it is true that in this State we speak of the proof of freedom from contributory negligence as being a burden of proof resting upon the plaintiff, it is, in reality,

even here, more than a mere burden of proof, it is a substantive part of the plaintiff's right to recover. At common law a person has no cause of action for negligence, if he himself has contributed, in the slightest degree, to bring it about. A defendant's negligence is not sufficient to justify a recovery. Two elements are necessary, the defendant's negligence being one, the plaintiff's freedom from contributory negligence the other. The right to recover depends upon the plaintiff establishing both these elements, the defendant's negligence and also his own freedom from contributing negligence. Other jurisdictions have a different rule, placing the burden of establishing contributory negligence upon the defendant. Such is the rule in the Federal courts. (*Inland & Seaboard Coasting Co.* v. *Tolson*, 139 U. S. 551, at p. 557.) But whether the plaintiff has the burden in the first instance of proving freedom from contributory negligence or the defendant the burden of proving contributory negligence, the substantive right to a recovery remains the same; the slightest contributory negligence upon the part of the plaintiff, no matter how or by whom it may be proven, bars recovery; establishes that there is and was no cause of action, no right to damages.

The Contributory Negligence Act of Ontario does more than touch or affect a matter of procedure; it goes beyond directing who shall first proceed to prove that. the act of the defendant was *solely* responsible for the act or the damage. The act gives a right to recover not recognized by the common law. It provides that even if the plaintiff be guilty of contributory negligence he may yet recover, if the defendant were more negligent, the recovery, however, being limited to the surplus degree of negligence, as figured out by a jury. The law of the State of New York has no application under such circumstances; it is impossible of application. As a mere matter of procedure, the plaintiff here must prove his freedom from contributory negligence but if in his proof

he fails to establish his freedom from contributing neglect or shows that he was neglectful, his complaint must be dismissed. He has no cause of action. If the Ontario act had merely dealt with this order of proof or burden of proof, and provided that the defendant, in common-law actions for negligence, had the burden of proving the plaintiff's contributory negligence, we would have another question. There would then be the same substantial right as at common law, the change merely being in the procedure at the trial or in the burden of proof. Under such circumstances our courts might feel called upon to apply our own rule. (*Campbell* v. *New York Evening Post, Inc.*, 245 N. Y. 320, at p. 324.) This point, however, we need not pass upon at this time. As we have said, the Ontario act goes beyond a matter of procedure and gives a right unknown to the common law, the right of an injured person to recover for another's negligence, even though contributing by his own neglect to bring it about. For these reasons the trial court was quite correct in charging the jury in accordance with the Ontario statute.

The appellant suggests that as this act does not refer to the burden of proof, the plaintiff, under our form of procedure, should have the burden of proving either freedom from contributing negligence or else the degree to which his own negligence contributed. We have no such law in this State. To follow the appellant's suggestion would still require our courts to adopt a portion of the Ontario statute. If we are to adopt a part we must apply it as a whole, because it affects the substantial rights of the parties. Under our rule, it would be impossible for the plaintiff to prove his own contributing neglect, without proving himself out of court, as we have no comparative negligence rule for actions at common law. As has been stated more than once, this action is under the Ontario statute.

Furthermore, the courts of this State are not unaccus-

tomed to the application of the law of contributing negligence adopted by the Ontario act. We have a similar provision under section 3 of the Federal Employers' Liability Act (Act of April 22, 1908, 35 Stat. at Large, 66, ch. 149). Although the acts of Congress form part of the laws of the State of New York (*Central Vermont Ry. Co. v. White*, 238 U. S. 507), unlike the laws of Ontario, yet the application, when it is to be made, is very much similar in both instances. The burden of proof has also been shifted in death cases. (Decedent Estate Law [Cons. Laws, ch. 13], § 131.) Under the Workmen's Compensation Law (Laws of 1922, ch. 615, § 11; Cons. Laws, ch. 67) if an employer fails to insure his employees, the employee may maintain an action in the courts for damages on account of an injury received. Not only shall it be unnecessary to plead or prove freedom from contributory negligence, but even the defense of contributory negligence may not be pleaded. (See, also, *Danielsen v. Morse Dry Dock & Repair Co.*, 235 N. Y. 439, as to the rule under the maritime law and our previous State Labor Law.) *Jacobus v. Colgate* (217 N. Y. 235) may be consulted for an explanation of the difference between rights and remedies, the former pertaining to the law of the place of occasion and the latter to the law of the forum. (See, also, *Duggan v. Bay State Street Ry. Co.*, 230 Mass. 370.) The acts giving a right of recovery for negligence causing death generally contain a time limitation. These short Statutes of Limitations of foreign jurisdictions have been applied by our courts as constituting a condition or part of the right or cause of action. (*Johnson v. Phœnix Bridge Co.*, 197 N. Y. 316.)

Another point raised by the appellant relates to the charge of the court regarding the law of Ontario. The court apparently left it to the jury to determine the law of Ontario, including the construction of the statutes and the court decisions as explained by the experts. Section

15 of the Board's order of May 26th, 1916, provided that the trolley poles supporting span wires shall be erected and maintained at a minimum distance of seven feet from the center line of the nearest track. The pole which Culp, the conductor, struck was nearer to the track than seven feet. It was within twelve inches of the step of the car. The pole, however, had been erected long before May 26th, 1916, the date of the order. Experts attempted to explain the meaning of section 15. Mr. Proudfoot, a barrister of Toronto, in behalf of the plaintiff, testified that this order of the Railway Board applied to equipment and to railways theretofore existing as well as to railroads constructed and poles erected thereafter. Mr. Grant, another barrister of Toronto, in behalf of the defendant, said that the International Railway Company had a vested or property right which could not be affected by the order.

Mr. Proudfoot, also in behalf of the plaintiff, testified that the law of rescue as applied to negligence cases in Canada was similar to that of New York State as stated in *Wagner* v. *International Ry. Co.* (232 N. Y. 176), expressing it as follows: " As I read the law of Ontario the question is whether the man under the circumstances acted as a reasonable man would do  *  *  *" taking "into consideration the fact that the man acted in an emergency, acted on impulse and would naturally not exercise the same amount of care as if he had time to reflect upon what he was doing." Fitzpatrick, we will recall, jumped for Culp, the conductor. The questions arising in the case were whether Fitzpatrick was guilty of contributory neglect in trying to rescue Culp and whether he was chargeable under such circumstances with Culp's negligence, if any. We need not specify all the instances in which these experts on the foreign law testified. The point raised by appellant is that the court should not have submitted all these questions to the jury. With this we agree. The difficulty with the appel-

lant's position is, however, that the trial counsel did not attempt to separate the questions of law for the court and the questions of fact for the jury by any proper request.

When it becomes necessary to establish the law of a foreign country it must be proved as facts are proven, but when, after such proof is given, the questions involved depend upon the construction and effect of a statute or judicial opinion, those questions generally are for the court and not questions of fact at all. (*Bank of China, etc.,* v. *Morse,* 168 N. Y. 458.) In *Hanna* v. *Lichtenhein* (225 N. Y. 579) this court said: " On a trial of an issue of fact when the evidence furnished is conflicting or inconclusive the law of a foreign State may be a question for the jury although ordinarily when the evidence is all furnished it is the function of the judge to decide as to the law of a foreign State." These rules, however, like many others, are easier stated than applied. Events test our theories and tax our philosophy. A look at the cases indicates that it is not always easy to separate the functions of the court and the functions of the jury in this particular. We have in our Civil Practice Act, section 391, reading as follows: " The unwritten or common law of another state, or of a territory, or of a foreign country, may be proved as a fact by oral evidence. The books of reports of cases adjudged in the courts thereof must also be admitted as presumptive evidence of the unwritten or common law thereof." This provision is taken from section 942 of the former Code of Civil Procedure. Greenleaf on Evidence (§ 486) says: " The better opinion seems to be, that this proof [of foreign laws] must be made to the Court, rather than to the Jury," and he quotes from Mr. Justice Story's Conflict of Laws the following: " For all matters of law are properly referable to the Court, and the object of the proof of foreign laws is to enable the Court to instruct the Jury what, in point of law, is the result of the foreign law to

be applied to the matters in controversy before them. The Court are, therefore, to decide what is the proper evidence of the laws of a foreign country; and when evidence is given of those laws, the Court are to judge of that applicability, when proved, to the case in hand." *Hansen* v. *Grand Trunk Ry. Co.* (78 N. H. 518, at p. 521); *Christiansen* v. *Graver Tank Works* (223 Ill. 142, at p. 151); *Charlotte* v. *Chouteau* (25 Mo. 465, at p. 474; S. C., 33 Mo. 194) went quite far in extending the duty of the court, while a more conservative rule has been stated in such cases as *Electric Welding Co., Ltd.*, v. *Prince* (200 Mass. 386, at p. 390) and *Hite* v. *Keene* (149 Wis. 207, at p. 215). In the former case we have the rule stated as follows: " The proof of the law of a foreign country may be by the introduction in evidence of its statutes and judicial decisions, or by the testimony of experts learned in the law, or by both. If the law is found in a single statute or in a single decision, the construction of it, like that of any other writing, is a question of law for the court. * * * ' Where the law is to be determined by considering numerous decisions which may be more or less conflicting, or which bear upon the subject only collaterally, or by way of analogy, and where inference may be drawn from them, the question to be determined is one of fact, and not of law.' " In the Wisconsin case the court said: " Where the only proof of a foreign law is some statute which has been offered in evidence, a number of courts hold that its construction is for the court. But where * * ' * oral testimony is taken in which there is a sharp conflict and where the case must practically be decided upon this oral testimony, the authorities are well nigh harmonious to the effect that the disputed question of fact presents a jury question in a case triable by a jury, and not one that can be taken from the jury and be decided by the court." This case also calls attention to the authorities which hold that judicial opinions, like statutes, are to be construed by the court.

All of the authorities agree that the construction of foreign statutes is a matter for the court and that their meaning should not be left to the jury as a question of fact. Such, no doubt, would also be the rule regarding orders of official bodies, having the force of law, that is, having the force of statute law. But how about court decisions? When these state the unwritten law of the foreign jurisdiction with reasonable certainty and clearness their application should not be left to the speculation of twelve men. If instances should arise, which will be rare, where the decisions are so perplexing or doubtful that experts disagree on the law we shall have to determine whether the question of the foreign law must then be solved by the jury. How the jury can do this as well as the judge, experienced in the law, I cannot quite appreciate. Personally, I am in sympathy with the expressions found in *O'Rourke* v. *Cunard Steamship Co., Ltd.* (169 App. Div. 943), and with Professor Wigmore's statement in section 2558 of his work on Evidence, to the effect that " the only sound view, either on principle or on policy, is that it [foreign law] should be proved to the judge, who is decidedly the more appropriate person to determine it."

However, applying the law as we find it in the decisions, the judge in this case should have told the jury the meaning and application of the order of the Railway and Municipal Board. If there was no substantial dispute or question as to the unwritten law as found in the decisions of the Ontario courts introduced in evidence he should also have given this law to the jury and told them to apply it. The appellant we find is not in a position to raise these questions or to complain of the result reached by the jury. The jury's finding is in accordance, at least, with what the court should have charged as a matter of law regarding the Ontario statutes and regulations. Moreover, while the counsel took an exception to the charge of the court he made no requests embodying

what he considered to be questions of law for the court and questions of fact for the jury. It is a fair procedure to require counsel to specify the objections to a charge by making a request calling attention to the alleged error so that it may be corrected then and there. And again, when the jury returned, late in the afternoon, and made a request for a further charge as to the application and meaning of the Ontario law and the orders of the Railway Board, counsel acquiesced in the charge which was a repetition of that previously given and took no exception to it.

Much time and effort have apparently been given by counsel in their very full briefs to discussing the question of assumption of risk. As this is not a master and servant case, we doubt whether the question is presented, but even so, no court could say that Fitzpatrick, as a matter of law, assumed the risk of the dangers arising out of the International Railway Company's lay-out of tracks.

The judgment below should be affirmed, with costs.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment affirmed.