ROBERT REIS & CO., Plaintiff, *v.* THE NEW YORK TRUST COMPANY and Another, Defendants.

City Court of New York, New York County, December 24, 1929.

———— —————, for the plaintiff.

———— —————, for the defendants.

SHIENTAG, J. This action, tried before me without a jury is one by the plaintiff against the defendant the New York Trust Company, to recover the sum of $1,117.65. The Royal Bank of Canada was brought in by the New York Trust Company as a defendant, in accordance with the provisions of section 193 of the Civil Practice Act on the contention of the New York Trust Company that if it is liable to the plaintiff then the Royal Bank of

Canada is liable to the New York Trust Company, because the latter collected the moneys on the check referred to in the complaint and turned them over to the Royal Bank of Canada.

The check mentioned in the complaint is dated April 7, 1928, and is a cashier's check of the Royal Bank of Canada at Havana, Cuba, in the sum of $1,117.65, to the order of the plaintiff, drawn on the Guaranty Trust Company of New York.

From January, 1928, to June, 1928, one George Lounsbury was employed by the plaintiff as its "general export manager," and in such capacity he represented and acted for the plaintiff in connection with the sale of merchandise to the plaintiff's customers in Havana, Cuba. The sales themselves were negotiated by a sales agent of the plaintiff in Cuba who acted under Lounsbury's direction. Juan Gonzales Bro. & Co. were customers of the plaintiff in Havana, Cuba. Some communications sent by the plaintiff to Gonzales prior to June, 1928, were signed by George Lounsbury as general export manager. Gonzales purchased merchandise on credit from the plaintiff and delivered the check referred to in the complaint to Lounsbury in payment of an invoice for merchandise sold and delivered by the plaintiff to Gonzales. Lounsbury indorsed the check in the name of the plaintiff, and returned it to Gonzales, who paid him the face amount thereof. The check was then deposited by Gonzales in their account with the Royal Bank of Canada at Havana, which in turn forwarded the check to the defendant the New York Trust Company for collection. On June 12, 1928, the New York Trust Company collected the check from the drawee bank. The plaintiff received no part of the proceeds of the check. The New York Trust Company remitted the proceeds of the check to the defendant the Royal Bank of Canada.

All of the foregoing facts are conceded by all of the parties.

It was also established upon the trial that the by-laws of the plaintiff corporation limited the right to indorse and negotiate checks to the plaintiff's order to any two of the officers of the plaintiff at any time. It also appears from the testimony that the plaintiff's office is in New York; that it had no office at all in Cuba; that it had no bank account there; that it kept no merchandise there; that Lounsbury's office was in New York city; that he went to Cuba once a year or once in two years; that when Lounsbury was in Cuba he made his headquarters at a hotel; that orders obtained by the salesman were sent to the New York office of the plaintiff, and merchandise delivered from that office; that the billheads and invoices of the plaintiff provided that bills were payable by draft drawn on a bank in New York, and that Lounsbury had authority

to receive such drafts from plaintiff's customers for transmission to the New York office.

It is conceded that, unless the situation is changed by the Cuban law, Lounsbury, under the circumstances outlined, had no authority to indorse the check on behalf of the plaintiff.

Authority to receive a negotiable instrument payable to the order of another imports no authority to indorse it in the name of the payee.

The defendants contend that the Cuban law does change the situation, and have interposed the defense that under the law of Cuba in effect at the time of the indorsement by Lounsbury, the latter by virtue of his position as general export manager had authority to indorse the check on behalf of the plaintiff.

The testimony as to the Cuban law was given by two expert witnesses, one, whose deposition was taken on behalf of the defendants, and the other called at the trial on behalf of the plaintiff. Certain preliminary objections to the questions put to the defendants' expert were interposed by the plaintiff. These have been overruled, because it is entirely proper to ask an expert witness to state what in his opinion is the foreign law applicable to any given case. That is primarily the purpose for which the expert is called. The weight to be given to his opinion will, of course, depend upon the reasons he advances and the authorities he cites to sustain his conclusions.

Stated generally, under the Cuban Code of Commerce, a manager of a corporation by virtue of his employment as such is empowered to indorse certain negotiable paper in the name of and on behalf of the corporation.

The plaintiff contends, *first*, that such authority is limited to the indorsement of bills of exchange, as such instruments are specifically defined in the Cuban Code, and that the check involved in this suit does not come within that definition; *second*, that in any event, Lounsbury was not a " manager " of a corporation within the meaning of the Cuban Code.

Although the subject is not free from doubt, I shall assume, for the purposes of this case, that the plaintiff's first contention has not been sustained, and that under the Cuban law the authority of a manager of a corporation to indorse extends to an instrument of the kind involved in this suit. The second contention requires more careful analysis. Was Lounsbury a " manager " within the meaning of the Cuban Code of Commerce? The Code does not specifically define what is meant by a manager of a corporation, nor do we get much help from either of the experts on that point. No adjudication by any tribunal in Cuba, no opinion set forth in

any treatise, no commentary on the Code, has been submitted. It was testified that none was available. And such independent research as I have been able to make has failed to throw much light on that point. The defendants' expert relies upon the joint operation of articles 447 and 292 of the Cuban Code of Commerce, which, according to the translation submitted, read as follows:

" Article 447. All persons who place their signatures on bills of exchange in the name of others, as drawers, endorsers, or as acceptors of the same, must be authorized thereto by virtue of a power of attorney of the persons for whom they act, this being stated in the subscribing clauses.

" The purchasers or holders of bills of exchange shall have the right to demand of the signers the exhibition of the power of attorney.

" The managers of companies shall be understood as authorized by the mere fact of their appointment."

" Article 292. Merchants may entrust to other persons besides the factors the constant management, in their name and for their account, of one or more branches of the business they are engaged in by virtue of a written or verbal agreement, companies including such agreements in their by-laws, and private parties making them known by public notices or by means of circulars to their correspondents.

" The acts of these special employees or agents shall only bind the principal with regard to the transaction proper to the branch of business which has been entrusted to them."

The defendants' expert, in construing these two articles, testifies: " If George Lounsbury was employed by Robert Reis & Co. as their general export manager and his appointment was made known to their Cuban clients, the acts of Lounsbury as such export manager in matters pertaining to the Cuban business of Robert Reis & Co. are binding upon the principal. Therefore, by joint operation of the two articles above quoted, any endorsement placed by George Lounsbury as export manager of Robert Reis & Co. on a draft arising from the export business of the company would be binding upon them." It is hardly necessary to say that the expert called on behalf of the plaintiff reaches the opposite conclusion.

I am not unmindful of the difficulties and pitfalls that beset the path of an outsider who assumes to define the law of a foreign country, particularly one operating under a different system of law than his own. To one brought up within the foreign system " varying emphasis, tacit assumptions, unwritten practices, a thousand influences gained only from life, may give to the different parts wholly new values that logic and grammar never could have

got from the books." (*Diaz* v. *Gonzalez*, 261 U. S. 102, 105.) The party asserting that the law of a foreign country is applicable to a case pending in our courts has the burden imposed upon him of establishing his contentions with respect thereto. "When it becomes necessary to establish the law of a foreign country it must be proved as facts are proven, but when after such proof is given the questions involved depend upon the construction and effect of a statute or judicial opinion, those questions generally are for the court and not questions of fact at all." (*Fitzpatrick* v. *International Ry. Co.*, 252 N. Y. 127.)

Words in a statute should be construed according to their natural meaning, having in mind the general purpose of the enactment. The manager of a corporation, as that term is understood, is one who has charge of a corporation, who is in control of its business, or of a branch establishment, who is vested with a certain amount of discretion and independent judgment. Lounsbury certainly was not such a manager.

Article 447 of the Cuban Code of Commerce, standing alone, does not help the defendants. That, in effect, is conceded by their expert. When we examine article 292, we find that it refers to persons other than managers. By its terms it deals with special employees or agents other than factors. The term " factor " is defined by article 283 of the Cuban Code of Commerce as follows: " The manager of an enterprise or manufacturing or commercial establishment for the account of another authorized to manage it, direct it and to contract on matters relating thereto with more or less powers as the owner may have deemed convenient, shall have the legal concept of ' factor,' and the provisions contained in this section shall be applicable to him." That definition expresses something like our own conception of a manager of a business enterprise. Reading the two articles together in the light of the definition of a " factor " just quoted, I reach the conclusion that a manager in charge of, or who directs, a business would have power by virtue of his position to indorse negotiable paper. Other special employees or agents of a corporation intrusted with the management of one or more branches of the business would be limited in their authority to that set forth in the by-laws of the corporation, but in any event their acts would bind their principal only with " regard to the transaction proper to the branch of business which has been entrusted to them."

In the instant case Lounsbury was not mentioned in the by-laws of the plaintiff corporation, and in the regular course of the duties intrusted to him he would never have any occasion to indorse

negotiable paper drawn to the order of the corporation by whom he was employed.

Without imputing any improper motives to Gonzales & Co., when they cashed the corporation's check for Lounsbury they did something that was decidedly irregular and not in accordance with ordinary business usage. The indorsement of the negotiable instrument had nothing to do with the branch of business intrusted to Lounsbury.

The point was made by the plaintiff's expert that the word " manager " as used in the Cuban Code of Commerce applied only in the case of a business establishment conducted in Cuba. It is unnecessary to go into that. I find that in this case the defendants have failed to establish their contentions with respect to the law of Cuba. It must, therefore, be assumed that the law of the foreign country is similar to our own on the matters in controversy. Accordingly, judgment is directed in favor of the plaintiff and against the defendant New York Trust Company for the amount demanded in the complaint, with interest and costs, and judgment is directed over, in like amount, in favor of that defendant and against the defendant the Royal Bank of Canada. Exception to the defendants, who are allowed a stay of execution of twenty days, and thirty days to make a case. Settle order on notice.