**Thomas POLICARE, Plaintiff**

v.

**UNITED STATES of America, Defendant.**

**No. 17172.**

United States District Court
E. D. New York.

June 26, 1959.

Dominic J. Cornella, New York City, for plaintiff.

James M. Fitzsimons, New York City, John Hurley, Asst. U. S. Atty., Brooklyn, N. Y., for defendant.

**J. SKELLY WRIGHT**, District Judge.

Plaintiff Policare, while standing by the left front fender of his taxicab near the corner of 70th Street and Second Avenue in Manhattan, was struck by a U. S. mail truck. He brings this action under the Federal Tort Claims Act [1] for damages arising out of the accident.

Policare's version of the accident differs in detail from that given by the mail truck driver, Kavanagh, but the basic facts of the accident are not in dispute. Those basic facts are that Policare was standing by the left front fender of his cab, that Kavanagh saw him in that position, and that the right side of the body of the mail truck [2] came in contact with Policare, compressing him against the left front fender of his taxicab.

Policare's testimony places his cab on 70th Street approximately five feet west of Second Avenue and three feet from the curb of 70th Street, while Kavanagh places the cab on 70th Street approximately 15 feet west of the Second Avenue intersection nine feet from the curb, double parked. Both agree that there was debris in 70th Street from buildings being erected on the corner and that Policare, standing by the front left fender of his cab, was signaling to Kavanagh in the mail truck. There is a difference in the testimony, however, as to the character of the signal. Policare stated that he was waving Kavanagh away from the cab, whereas Kavanagh testified that Policare was signaling him to come through alongside the cab. Both agree that Kavanagh made a right turn into Second Avenue from 70th Street and proceeded for some five blocks completely unaware that he had struck Policare. The driver of a taxi following the mail truck on 70th Street, seeing the mail truck leave the scene of the accident, continued after and overtook it some five blocks away. The mail truck and the taxi returned to 70th and Second Avenue, picking up a policeman en route.

The Government first alleged, and sought to show, that the body of the mail truck came in contact with Policare, not when it attempted to make a right turn into Second Avenue, but when it swayed from the effect of debris or bumps in the street. This theory exploded when the driver Kavanagh testified that he could not recall whether the truck leaned one way or the other at the time of the accident. Kavanagh did testify that because of the position in which his testimony placed Policare and his cab, the accident could not have happened while he was making his right turn into Second Avenue. Kavanagh's report of motor vehicle accident, signed and filed by him as required by New York law, shows, however, that the accident did in fact happen while the turn was being made. In addition, this report supports Policare's rather than Kavanagh's testimony with respect to the position of the cab at the time. The testimony of the only other eye witnesses, the driver and the passenger in the cab following the mail truck, also supports Policare's testimony in every detail.

In the face of the discredited testimony of Kavanagh, the Government has virtually abandoned its suggestion that Kavanagh was free from negligence and now, posttrial, centers its attack on the alleged contributory negligence of Policare. The Government argues that the Policare taxicab was parked in violation of the traffic regulations [3] of the City

---

1. 28 U.S.C. § 1346.

2. The mail truck had a capacity of three tons. The dual-wheeled body thereof extended out from the balance of the truck over one foot on either side.

3. Section 14(b) of the Traffic Regulations of the City of New York, in effect at the time of the accident, reads as follows:

   "One-way roadways. Except where angle parking is authorized, every vehicle stopped, standing, or parked upon a one-way roadway where there are adjacent curbs shall be stopped, standing, or parked parallel with the nearest curb, headed in the direction of lawful traffic movement with the nearest wheels of such vehicle parallel to and within twelve inches of the curb."

   Section 121 of said regulations reads as follows:

   "Vehicle shall not obstruct traffic. The driver of a vehicle shall not permit it to so occupy any street as to obstruct traffic

of New York and that this violation contributed to the accident. It also asserts that Policare had negligently placed himself in a position of danger and that he should have retreated from this position around the front part of his cab rather than attempt to direct the mail truck while standing alongside.

■ There is no dispute as to the law of New York covering this accident. The burden is on the plaintiff to prove, not only freedom from contributory negligence on his part, but also negligence on the part of the defendant proximately causing the accident. Fitzpatrick v. International Railway Co., 252 N.Y. 127, 134, 169 N.E. 112, 68 A.L.R. 801; Weston v. City of Troy, 139 N.Y. 281, 282, 34 N. E. 780. The doctrine of last clear chance is also recognized in New York, but its application is limited to those situations where the peril of one party is actually discovered by the other. Hernandez v. Brooklyn & Queens Transit Corp., 284 N.Y. 535, 32 N.E.2d 542; Panarese v. Union Railway Co., 261 N.Y. 233, 185 N.E. 84. Applying these governing principles, it is clear that the legal responsibility for this accident arises from the negligence of Kavanagh. It was his negligence which was proximate to the accident. Any negligence on the part of Policare was merely a condition rather than a cause thereof. See Tedla v. Ellman, 280 N.Y. 124, 19 N.E.2d 987; 4 N Y.Jur., Automobiles Sec. 274.

It is obvious from the evidence, including the diagram of the accident as drawn by Kavanagh, that Policare was pressed against the left front fender of his cab while Kavanagh was in the act of making a right turn into Second Avenue. This right turn brought the bulbous body of the three-ton mail truck into contact with Policare, crushing his hip against his cab. Assuming, as Kavanagh says, that Policare was signaling him to pass on by the cab, there is no suggestion in the evidence, even from Kavanagh, that that signal included

a right turn by the mail truck into Second Avenue. It was the right turn that caused the accident. It was the proximate cause thereof.

The plaintiff, the father of four minor children, was, at the time of the accident, a moonlighter. For eight hours a day he operated an elevator for $60 a week. For another eight hours of the same day, he operated a taxicab from which operation he averaged approximately the same amount. He was not able to return to work of any kind until May 1, 1957, or approximately 4½ months after the accident. On that day he resumed his job as elevator operator. He has not returned to his second employment as taxi driver because of the condition of his back.

In the accident Policare suffered a fracture of the pubis ramus and the ischium, in addition to generalized contusions and abrasions. He left the hospital on crutches on January 4, 1957. He graduated from crutches to a cane which he used until he returned to work May 1, 1957. He was discharged by his treating physician on August 20, 1957 after 50 office visits. This treating physician, Dr. Garofalo, who last examined plaintiff on June 11, 1959, testified that Policare is still suffering with his back. On that date there were still spasms of the spinus-erectus muscles and the normal lordotic curve had been removed from Policare's back by the flattening of the muscles across the small thereof. The final diagnosis was lumbo-sacral sprain, permanent.

Dr. Garofalo was supported in his testimony by Dr. Walder, an orthopedist who checked Policare from time to time while he was under treatment.[4] Dr. Walder last saw plaintiff on June 1, 1959. At that time he noticed that his back was flat and that there was considerable spasm of the paravertebral and hamstring muscles. His final diagnosis was chronic lumbo-sacral sprain, permanent. Both Dr. Walder and Dr. Garofalo also

---

or stand other than as close to the curb or edge of the roadway as possible for any purpose."

4. The Government had Policare examined, but offered no medical testimony.

testified that Policare could not return to work as a cab driver because his back would not tolerate sitting for extended periods of time. These doctors stated that the length of Policare's work day in whatever employment would be restricted to some extent by the condition of his back.

The measure of damages in a case of this kind always presents problems. It is most difficult to assess with any degree of accuracy the amount which will fairly compensate the plaintiff for his injuries, loss of earnings to date, and loss of future earning capacity. But it is an assessment which must be made. His loss of earnings from December 19, 1956 to May 1, 1957 is assessed at $2,250; his loss of earnings from May 1, 1957 to the date of the trial, June 16, 1959, $3,000; his loss of future earning capacity, $5,000; his pain and suffering, $5,000; and his medical expenses, $713.75.

Attorney fees are fixed at 20%.

Judgment for plaintiff.