0437

John H. SHERER, as Administrator of the Estate of Scott Middleton Sherer, Appellant, v. Charles A. JAMES, M.D., Respondent.

(334 S. E. (2d) 283)

Court of Appeals

---

*O. Fayrell Furr, Jr.* and *Charles L. Henshaw, Jr.* of *Law Offices* of *Fayrell Furr, Jr.*, Myrtle Beach, *for appellant.*

*Donald V. Richardson, III,* and *Charles E. Carpenter, Jr.* of *Richardson, Plowden, Grier & Howser,* Columbia, *for respondent.*

Heard Feb. 28, 1985.

Decided April 15, 1985.

Reheard June 18, 1985.

On Rehearing Aug. 22, 1985.

GOOLSBY, Judge:

This is a medical malpractice case brought by Scott Middleton Sherer against the respondent Charles A. James, M.D. Following a jury trial, judgment was entered in favor of James. John H. Sherer, the administrator of the Sherer's estate, appeals.[1] We reverse and remand for a new trial.

The only issue we need address concerns the trial judge's refusal to give Scott's request to charge concerning an increased risk of physical harm due to the negligent performance of an undertaking to render services.

Scott's amended complaint alleges that he lost his left testicle as a proximate result of James's negligent failure to diagnose and treat him for torsion of the testicle after James "undertook to advise" him regarding the cause of the pain Scott was experiencing in the lower left side of his abdomen. The amended complaint further alleges that James's failure to exercise reasonable care to perform his undertaking contributed to the progression of Scott's condition.

On Wednesday evening, January 19, 1977, according to the testimony of Scott's mother, Scott, who was then twelve years old, developed abdominal pain after playing basketball. His mother telephoned James, a pediatrician. She told James that Scott had pain in his left side and that there was a swollen area at the site of the pain. James advised the mother he thought Scott had pulled a muscle. He prescribed aspirin for Scott and recommended heat be applied to the painful area.

Later the same evening, Scott's mother again telephoned James and informed him that Scott had vomited and was still in pain. She reminded James that Scott had a history of testicle problems. James, however, diagnosed Scott as having a "stomach virus" and suggested Scott be given paregoric.

James called Scott's mother Thursday morning to inquire about Scott's condition. The mother told James that Scott "had a fitful night." James directed her to call him if Scott's condition changed.

---

[1] Scott died subsequent to trial.

On Friday morning, Scott discovered that his left testicle was swollen. His mother telephoned James's office and related Scott's symptoms to the nurse. The latter directed the mother to bring Scott in for examination. Shortly afterward, James examined Scott, determined he had torsion of the testicle, and immediately referred him to a urologist, Joe Miller, M.D. Miller removed Scott's left testicle later that day.

A professor at the Medical University of South Carolina, Hiram B. Curry, M.D., offered expert medical testimony in support of Scott's case. He testified that if treatment for torsion of the testicle is not commenced within 48 hours from the onset of symptoms the testicle is irreparably damaged. Curry also testified that if Scott had been diagnosed on Wednesday night as having torsion of the testicle and if appropriate treatment had been rendered there would have been a better than 50 percent chance of saving his testicle. Curry also expressed the opinion that James would have diagnosed Scott's condition as torsion of the testicle had he examined Scott on Wednesday evening and that James's failure to examine Scott on Wednesday evening constituted a departure from the applicable standard of care.

At trial, Scott's counsel requested the trial judge to charge the jury that:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize [as] necessary for the protection of the other['s] person ... is subject to liability to [the] other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if his failure to exercise such care increases the risk of such harm ...

See RESTATEMENT (SECOND) OF TORTS Section 323(a) (1965). The trial judge refused the request because he thought his charge "covered it."

The trial judge's charge, however, did not embrace the requested instruction. No portion of the trial judge's charge dealt with increased risk of harm resulting from a physician's failure to exercise reasonable care in undertaking to render medical services.

Instructions to the jury should be confined to the issues made by the pleadings and supported by the evidence. *Baker v. Weaver*, 279 S. C. 479, 309 S. E. (2d) 770 (Ct. App. 1983). Ordinarily, a trial judge has the duty to give a requested instruction that correctly states the law applicable to the issues and the evidence [88 C. J. S. *Trial* Section 399b at 1101 (1955); *Id.* Section 407 at 1122; *see Carraway v. Pee Dee Block, Inc.*, 275 S. C. 511, 273 S. E. (2d) 340 (1980)]; but to warrant a reversal for a refusal to give a requested instruction, the refusal must have been erroneous and prejudicial. *Merritt v. Grant*, 328 S. E. (2d) 346 (S. C. Ct. App. 1985).

The trial judge's refusal to give the requested instruction was erroneous. It fell within the confines of the pleadings and the proof. It also embodied a correct principle of law. *Clark v. Ross*, 328 S. E. (2d) 91 (S. C. Ct. App. 1985). Proof that a physician's conduct increased a patient's risk of injury by decreasing his chances of recovery will support a finding of proximate cause. *Herskovits v. Group Health Cooperative of Puget Sound*, 99 Wash. (2d) 609, 664 P. (2d) 474 (1983).

The trial judge's refusal to give the requested instruction was also prejudicial. Causation *vel non* was a critical issue, if not the critical issue, in the case. *See Hamil v. Bashline*, 481 Pa. 256, 392 A. (2d) 1280 (1978). Without the charge in this instance, the jury was left with the clear impression, particularly since the trial judge repeatedly stressed throughout his instructions that the physician's negligence must be "the" proximate cause of the patient's injury, that the physician's negligence must be the *sole* cause of injury. In fact, liability can attach if the physician's negligence were but a substantial factor in bringing about the patient's injury. *Clark v. Ross, supra; see Coleman v. Shaw*, 281 S. C. 107, 314 S. E. (2d) 154 (Ct. App. 1984).

We do not discuss the exception relating to the trial judge's charge that a physician enjoys the presumption he acted with due care. The instruction was given twice. Counsel for Scott objected to the instruction the first time it was given but not after the trial judge repeated it upon the jury's request for further instructions. "Where, after exception is taken to a charge, the court recharges the jury on the same subject, and no further exception is taken,

any error in the latter charge is cured." 88 C. J. S. *Trial* Section 425 at 1151 (1955); *Bonazzi v. Fortney,* 94 Vt. 263, 110 A. 439 (1920); *see Fitzpatrick v. International Ry. Co.,* 252 N.Y. 127, 169 N.E. 112, 68 A.L.R. 801 (1929).

James maintains that Scott is in no position to appeal his complaint concerning the refusal by the trial judge to charge his requested instruction because Scott did not move for a new trial following the verdict and because Scott opposed the motion James made for a mistrial after the trial judge gave the jury additional instructions. Neither position has merit.

Scott preserved his right to challenge the trial judge's refusal to give his requested instruction by submitting the request at the appropriate time. *See J. W. Green Co. v. Turbeville,* 263 S. C. 456, 210 S. E. (2d) 743 (1974); *Brown v. Howell,* 327 S. E. (2d) 659 (S. C. Ct. App. 1985); S. C. CIR. CT. R. 11; S. C. Code of Laws Section 15-27-100 (1976).

The question of whether a party's motion for a mistrial should be granted is a matter left largely to the trial judge's discretion [*Riddle-Duckworth, Inc. v. Sullivan,* 253 S. C. 411, 171 S. E. (2d) 486 (1969)] and does not depend upon the opposing party's stance concerning the motion; therefore, whether Scott opposed the motion is of no consequence. *Cf.* 83 C. J. S. *Stipulations* Section 17 at 39 (1953) ("A stipulation entered into between counsel which materially affects conduct of litigation ... is subject to the consent of the judge of the court involved.").

In any event, our research failed to uncover any case wherein a court held that a party waives his right to appeal a refusal to give a requested instruction where the party opposes the other party's motion for a mistrial made after the request was submitted and ruled upon. The cases relied on by James [*Spencer v. Kirby,* 234 S. C. 59, 106 S. E. (2d) 883 (1959); *State v. Rayfield,* 232 S. C. 230, 101 S. E. (2d) 505 (1958); *State v. Harreld,* 228 S. C. 311, 89 S. E. (2d) 879 (1955); *Brown v. Singletary,* 226 S. C. 482, 85 S. E. (2d) 738 (1955); *Sellars v. Collins,* 212 S. C. 26, 46 S. E. (2d) 176 (1948); *Broadway v. Jeffers,* 185 S. C. 523, 194 S. E. 642 (1938); *Lumpkin v. Mankin,* 136 S. C. 506, 134 S. E. 503 (1926); *State v. Ballew,* 83 S. C. 82, 63 S. E. 688 (1909): *State v. Johnson,* 66 S. C. 23, 44 S. E. 58 (1903); *Mew v. Charleston & Savannah Ry. Co.,* 55

S. C. 90, 32 S. E. 828 (1899)] are clearly distinguishable and warrant no discussion.

Reversed and remanded.

BELL and CURETON, JJ., concur.

On Rehearing

GOOLSBY, Judge:

The respondent Charles A. James, M.D., petitioned this court for a rehearing. A rehearing was conducted on the several grounds asserted in the petition that question our holding that the trial judge erred in not charging the jury instruction requested by the appellant Scott Middleton Sherer concerning increased risk of harm.

Sherer based his requested instruction on Section 323(a) of the Restatement (Second) of Torts (1965). This section reads as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person ..., is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure, to exercise such care increases the risk of such harm. ...

James argues the South Carolina Supreme Court held in *Hanselmann v. McCardle*, 275 S. C. 46, 267 S. E. (2d) 531 (1980), that proof showing the defendant's conduct increased the risk of harm or death by decreasing the chance of recovery or survival is insufficient to take the issue of proximate cause to the jury. He relies principally upon the reading given *Hanselmann* by the Supreme Court of Washington in *Herskovits v. Group Health Cooperative of Puget Sound*, 99 Wash. (2d) 609, 614, 664 P. (2d) 474, 476 (1983).

The Washington Supreme Court, however, misinterpreted *Hanselmann*. In *Hanselmann*, our Supreme Court simply held that there was no evidence in the record from which a jury could infer a physician's negligence was a proximate cause of the decedent's death.

Here, however, and unlike *Hanselmann*, the record contains evidence from which a jury could reasonably infer the patient's injury could have been avoided "but for" the physician's failures to examine the patient, to provide a correct and timely diagnosis of the patient's condition, and to render appropriate treatment therefor.

*Hanselmann*, moreover, pertains only to causation and does not prescribe, as does Section 323(a), a standard of conduct. In this respect, *Hanselmann* and Section 323(a) are not, as James would have us believe, in conflict. The jury must still find it is more probable than not that the defendant's conduct caused the injury. Increased risk is simply a factor the jury may consider in reaching this determination.

Accordingly, we adhere to our earlier opinion. The stay of remittitur heretofore granted is revoked.

BELL and CURETON, JJ., concur.