GEORGE MANLEY, administrator, *vs.* BOSTON AND MAINE
RAILROAD.

Hampshire.   September 19, 1893. — October 18, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Loss of Life — Railroad — Collision at Grade Crossing — Negligence.*

In an action against a railroad company to recover damages for a loss of life by
running over a traveller at a crossing, if the burden rests on the defendant under
Pub. Sts. c. 112, §§ 163, 213, to prove that the deceased was guilty of gross or
wilful negligence, such burden is not conclusively sustained merely by proving
that the deceased was familiar with the place and attempted to pass the cross-
ing without looking to see whether a train was approaching, or attempted to
pass in front of an approaching train which he saw. Other circumstances or
elements may be proper to be taken into consideration by the jury in determin-
ing the question.

TORT, by the administrator of the estate of Joseph Wallace,
for causing his death. Trial in the Superior Court, before
*Mason*, C. J., who allowed a bill of exceptions, in substance as
follows.

Wallace was killed by being struck by an engine attached to
a train of the defendant at a grade crossing in Ware. He had
lived in the vicinity for several years, and was familiar with the
locality where the collision occurred. He had frequently trav-
elled the road. The train which caused his death was a regular
one, which had for a long time passed the point in question at
the same time, about twenty minutes past three o'clock in the
afternoon. There was evidence tending to show that the train
was on time; also evidence that the train was late. The train
was moving in a northerly direction, and Wallace was approach-
ing the crossing from the west, driving towards the east, at a
slow trot, one horse attached to a covered wagon, the cloth sides
of which extended to the front end of the wagon. He sat back
in the wagon so that his feet were inside, and he was in a posi-
tion where he could see objects to the right or left obliquely, but
not at right angles with the line of motion of his horse. There
was evidence tending to show that he approached the crossing at
a slow trot, slackening to a walk at an ascending grade near the
railroad track; that the train was approaching around the curve

of a hill; that it was not in sight when at the whistling post, eighty rods from the crossing, being hidden by the hill around which the road curved; that to a traveller distant twenty-six feet from the crossing, a train approaching from the south was in sight when six hundred and thirty-one feet away; that to a traveller approaching as stated and distant one hundred and seventy feet, the approaching train could be seen at least three hundred and eighty-five feet away, towards the south; that ten or fifteen minutes before the collision, while Wallace was at a house nine hundred feet from the crossing, but not in view of it, another train passed the crossing; that Wallace, when approaching the track, had his head turned around to the right, as if looking at some pigs which he had in a box in the rear of his wagon; and that he did not, except as may be inferred from what is herein recited, look to see whether a train was approaching until his horse was going upon the track, when, just as two sharp signals were given by the whistle of the engine, he looked out of his wagon towards the train, and was struck by the engine.

The defendant asked the Chief Justice to instruct the jury, that " if Wallace was familiar with the locality, and knew the time when the train was due to pass this crossing, and if he attempted to pass it without looking to see whether the train was approaching, his negligence was gross "; and that " if he was familiar with the locality, and knew the time when the train was due to pass this crossing, he did look and see the approaching train, and then did attempt to cross in front of it, his negligence was gross and wilful."

The Chief Justice declined to give the instructions asked for; and instructed the jury that it was incumbent on the plaintiff to prove by a preponderance of the evidence that there was a failure to sound the whistle or ring the bell eighty rods from the crossing, and continue the one or the other, either alternately or continuously, until the engine had crossed the way in question; and upon the question of the negligence of the plaintiff's intestate the judge gave the following instructions: " If the failure to give the signals contributed to that loss of life, then there is a right to recover, unless it is shown that the plaintiff's intestate, in addition to the want of ordinary care, was at the time of the collision guilty of gross or wilful negligence. There is no con-

tention here that, upon the evidence, there should be any finding of his being engaged at the time in an unlawful act. The defence upon this branch of the case rests upon the contention that you should find upon the evidence that he was, at the time of the collision, guilty of gross and wilful negligence. The law imposes a duty upon the traveller, in approaching a grade crossing, to have his faculties of observation on the alert; to approach such a place of danger with caution; to look, if looking be of avail; to listen, if listening be of avail; to use such senses as are given to him to see if it be safe to proceed over the crossing. If the deceased, living in the vicinity, knowing of the time when the train was to be expected, approached that crossing and went over it without any such precaution, without stopping to look or to listen, he was guilty of negligence. If he looked and saw the approaching train, and deliberately went upon the crossing in front of the approaching train, with nothing occurring to compel him so to go, he would be guilty of negligence. Whether the negligence in either case is gross negligence or wilful negligence must be determined with reference to all the circumstances, and determined by you as a matter of fact. If it were disclosed that, at the time of entering upon the track, he saw the approaching train, and that the fright, the shock from imminent danger, disconcerted him so that he did not know what he was about, it would effectually meet the charge of wilful negligence, because he would not be conscious of what he did do, and would not be guilty of wilfully taking a great risk in going in front of the approaching train. So the circumstances surrounding him, the difficulty of turning, the difficulty of stopping, the difficulty of taking any other course than going forward, which would all be affected by what exists at the crossing in question, are to be taken into consideration in determining whether what is shown with reference to the conduct of Wallace just at the time of the collision was grossly negligent or not. It is a question of fact for you to determine, upon all the evidence. Unless it is affirmatively shown that he was guilty of gross negligence or of wilful negligence, one or the other, he is entitled to recover, if the other propositions have been maintained; if he has satisfied you upon this evidence that there was a failure of signals, and that the failure contributed to loss of life."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*J. C. Hammond*, for the defendant.

*W. H. Brooks*, for the plaintiff.

ALLEN, J.   For the purpose of determining these exceptions, it must be assumed that the jury were satisfied that the defendant neglected to give the signals required by Pub. Sts. c. 112, §§ 163, 213, and that such neglect contributed to the injury.   In order to escape liability, it was therefore incumbent on the defendant, under the statute, to prove that the deceased, in addition to a mere want of ordinary care, was guilty of gross or wilful negligence which contributed to the injury.   It is conceded on the part of the defendant that the Chief Justice, who presided at the trial, was right in submitting this question to the jury; but the defendant complains that no sufficient explanation of what would constitute gross negligence was given to the jury, and that the instructions which were requested upon this subject ought to have been given.   The requests, however, were too broadly put.   The error consisted in selecting certain circumstances, and assuming that these alone, if proved, would be conclusive.   But other circumstances might enter into the question. Looking to see whether a train was approaching might not be the only test, nor even the best one, under all circumstances. And knowledge that a train was approaching would not necessarily render an attempt to cross the track in front of it gross negligence.   Certainly the circumstances mentioned would be strong evidence of gross negligence.   All we say is, they were not conclusive.   The deceased might have listened.   His ears might have been better than his eyes.   There might have been obstacles in the way.   He might have been close upon the track before seeing the approaching train, and have become confused or excited by the immediate danger.   The condition of the road might not have admitted of his turning round.   There might be various circumstances which would have some bearing upon the question of his negligence, or the degree of it, even though he failed to look.   *Chaffee* v. *Boston & Lowell Railroad*, 104 Mass. 108.   *Williams* v. *Grealy*, 112 Mass. 79.   *Hanks* v. *Boston & Albany Railroad*, 147 Mass. 495.   The instructions to the jury were carefully guarded, and were sufficient to protect the legal

rights of the defendant, the burden of proof being upon the defendant to establish affirmatively the existence of gross negligence. The case is distinguishable from *Debbins* v. *Old Colony Railroad,* 154 Mass. 402, where it was held that the undisputed facts showed gross negligence. See also *Sullivan* v. *New York, New Haven, & Hartford Railroad,* 154 Mass. 524. The decisions in cases where it was necessary for the plaintiff to prove that he was in the exercise of ordinary care are also distinguishable from the present case.                              *Exceptions overruled.*