## PALMER ET AL., TRUSTEES, v. HOFFMAN, ADMINISTRATOR.

No. 300.   Argued January 7, 8, 1943.—Decided February 1, 1943.

*Mr. Edward R. Brumley* for petitioners.

*Mr. William Paul Allen,* with whom *Mr. Benjamin Diamond* was on the brief, for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This case arose out of a grade crossing accident which occurred in Massachusetts. Diversity of citizenship brought it to the federal District Court in New York. There were several causes of action. The first two were on behalf of respondent individually, one being brought under a Massachusetts statute (Mass. Gen. L. (1932) c. 160, §§ 138, 232), the other at common law. The third and fourth were brought by respondent as administrator of the estate of his wife and alleged the same common law and statutory negligence as the first two counts. On the question of negligence the trial court submitted three issues to the jury—failure to ring a bell, to blow a whistle, to have a light burning in the front of the train. The jury returned a verdict in favor of respondent individually for some $25,000 and in favor of respondent as administrator for $9,000. The District Court entered judgment on the

verdict. The Circuit Court of Appeals affirmed, one judge dissenting. 129 F. 2d 976. The case is here on a petition for a writ of certiorari which presents three points.

I. The accident occurred on the night of December 25, 1940. On December 27, 1940, the engineer of the train, who died before the trial, made a statement at a freight office of petitioners where he was interviewed by an assistant superintendent of the road and by a representative of the Massachusetts Public Utilities Commission. See Mass. Gen. L. (1932) c. 159, § 29. This statement was offered in evidence by petitioners under the Act of June 20, 1936, 49 Stat. 1561, 28 U. S. C. § 695.[1] They offered to prove (in the language of the Act) that the statement was signed in the regular course of business, it being the regular course of such business to make such a statement. Respondent's objection to its introduction was sustained.

We agree with the majority view below that it was properly excluded.

We may assume that if the statement was made "in the regular course" of business, it would satisfy the other provisions of the Act. But we do not think that it was made "in the regular course" of business within the meaning of the Act. The business of the petitioners is the railroad business. That business like other enterprises

---

[1] "In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of said act, transaction, occurrence, or event, if it shall appear that it was made in the regular course of any business, and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility. The term 'business' shall include business, profession, occupation, and calling of every kind."

entails the keeping of numerous books and records essential to its conduct or useful in its efficient operation. Though such books and records were considered reliable and trustworthy for major decisions in the industrial and business world, their use in litigation was greatly circumscribed or hedged about by the hearsay rule—restrictions which greatly increased the time and cost of making the proof where those who made the records were numerous.[2] 5 Wigmore, Evidence (3d ed., 1940) § 1530. It was that problem which started the movement towards adoption of legislation embodying the principles of the present Act. See Morgan et al., The Law of Evidence, Some Proposals for its Reform (1927) c. V. And the legislative history of the Act indicates the same purpose.[3]

---

[2] The problem was well stated by Judge Learned Hand in *Massachusetts Bonding & Ins. Co.* v. *Norwich Pharmacal Co.*, 18 F. 2d 934, 937: "The routine of modern affairs, mercantile, financial and industrial, is conducted with so extreme a division of labor that the transactions cannot be proved at first hand without the concurrence of persons, each of whom can contribute no more than a slight part, and that part not dependent on his memory of the event. Records, and records alone, are their adequate repository, and are in practice accepted as accurate upon the faith of the routine itself, and of the self-consistency of their contents. Unless they can be used in court without the task of calling those who at all stages had a part in the transactions recorded, nobody need ever pay a debt, if only his creditor does a large enough business."

[3] Thus the report of the Senate Committee on the Judiciary incorporates the recommendation of the Attorney General who stated in support of the legislation, "The old common-law rule requires that every book entry be identified by the person making it. This is exceedingly difficult, if not impossible, in the case of an institution employing a large bookkeeping staff, particularly when the entries are made by machine. In a recent criminal case the Government was prevented from making out a prima-facie case by a ruling that entries in the books of a bank, made in the regular course of business, were not admissible in evidence unless the specific bookkeeper who made the

The engineer's statement which was held inadmissible in this case falls into quite a different category.[4] It is not a record made for the systematic conduct of the business as a business. An accident report may affect that business in the sense that it affords information on which the management may act. It is not, however, typical of entries made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls. The conduct of a business commonly entails the payment of tort claims incurred by the negligence of its employees. But the fact that a company makes a business out of recording its employees' versions of their accidents does not put those statements in the class of records made "in the regular course" of the business within the meaning of the Act. If it did, then any law office in the land could follow the same course, since business as defined in the Act includes the professions. We would then have a real perversion of a rule designed to facilitate admission of records which experience has shown to be quite trustworthy. Any business by installing a regular system for recording and preserving its version of accidents for which it was potentially liable could qualify those reports under the Act. The result would be that the Act would cover any system of recording events or occurrences provided it was "regular" and though it had little or nothing to do with the management or operation of the business as such. Preparation of cases for trial by virtue of being a "business" or incidental thereto would obtain the benefits of this liberalized version of the early shop book rule. The probability of

---

entry could identify it. Since the bank employed 18 bookkeepers, and the entries were made by bookkeeping machines, this was impossible." S. Rep. No. 1965, 74th Cong., 2d Sess., pp. 1–2.

[4] It is clear that it does not come within the exceptions as to declarations by a deceased witness. See *Shepard* v. *United States*, 290 U. S. 96; Wigmore, *supra*, chs. xlix–liv.

trustworthiness of records because they were routine reflections of the day to day operations of a business would be forgotten as the basis of the rule. See *Conner* v. *Seattle, R. & S. Ry. Co.,* 56 Wash. 310, 312–313, 105 P. 634. Regularity of preparation would become the test rather than the character of the records and their earmarks of reliability (*Chesapeake & Delaware Canal Co.* v. *United States,* 250 U. S. 123, 128–129) acquired from their source and origin and the nature of their compilation. We cannot so completely empty the words of the Act of their historic meaning. If the Act is to be extended to apply not only to a "regular course" of a business but also to any "regular course" of conduct which may have some relationship to business, Congress not this Court must extend it. Such a major change which opens wide the door to avoidance of cross-examination should not be left to implication. Nor is it any answer to say that Congress has provided in the Act that the various circumstances of the making of the record should affect its weight, not its admissibility. That provision comes into play only in case the other requirements of the Act are met.

In short, it is manifest that in this case those reports are not for the systematic conduct of the enterprise as a railroad business. Unlike payrolls, accounts receivable, accounts payable, bills of lading and the like, these reports are calculated for use essentially in the court, not in the business. Their primary utility is in litigating, not in railroading.

It is, of course, not for us to take these reports out of the Act if Congress has put them in. But there is nothing in the background of the law on which this Act was built or in its legislative history which suggests for a moment that the business of preparing cases for trial should be included. In this connection it should be noted that the Act of May 6, 1910, 36 Stat. 350, 45 U. S. C. § 38, requires officers of common carriers by rail to make under oath

monthly reports of railroad accidents to the Interstate Commerce Commission, setting forth the nature and causes of the accidents and the circumstances connected therewith. And the same Act (45 U. S. C. § 40) gives the Commission authority to investigate and to make reports upon such accidents. It is provided, however, that "Neither the report required by section 38 of this title nor any report of the investigation provided for in section 40 of this title nor any part thereof shall be admitted as evidence or used for any purpose in any suit or action for damages growing out of any matter mentioned in said report or investigation." 45 U. S. C. § 41. A similar provision (36 Stat. 916, 54 Stat. 148, 45 U. S. C. § 33) bars the use in litigation of reports concerning accidents resulting from the failure of a locomotive boiler or its appurtenances. 45 U. S. C. §§ 32, 33. That legislation reveals an explicit Congressional policy to rule out reports of accidents which certainly have as great a claim to objectivity as the statement sought to be admitted in the present case. We can hardly suppose that Congress modified or qualified by implication these long standing statutes when it permitted records made "in the regular course" of business to be introduced. Nor can we assume that Congress having expressly prohibited the use of the company's reports on its accidents impliedly altered that policy when it came to reports by its employees to their superiors. The inference is wholly the other way.

The several hundred years of history behind the Act (Wigmore, *supra*, §§ 1517–1520) indicate the nature of the reforms which it was designed to effect. It should of course be liberally interpreted so as to do away with the anachronistic rules which gave rise to its need and at which it was aimed. But "regular course" of business must find its meaning in the inherent nature of the business in question and in the methods systematically employed for the conduct of the business as a business.

II. One of respondent's witnesses testified on cross-examination that he had given a signed statement to one of respondent's lawyers. Counsel for petitioners asked to see it. The court ruled that if he called for and inspected the document, the door would be opened for respondent to offer the statement in evidence, in which case the court would admit it. See *Edison Electric Light Co.* v. *U. S. Electric Lighting Co.*, 45 F. 55, 59. Counsel for petitioners declined to inspect the statement and took an exception. Petitioners contend that that ruling was reversible error in light of Rule 26 (b) and Rule 34 of the Rules of Civil Procedure. We do not reach that question. Since the document was not marked for identification and is not a part of the record, we do not know what its contents are. It is therefore impossible, as stated by the court below, to determine whether the statement contained remarks which might serve to impeach the witness. Accordingly, we cannot say that the ruling was prejudicial even if we assume it was erroneous. Mere "technical errors" which do not "affect the substantial rights of the parties" are not sufficient to set aside a jury verdict in an appellate court. 40 Stat. 1181, 28 U. S. C. § 391. He who seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted. That burden has not been maintained by petitioners.

III. The final question presented by this case relates to the burden of proving contributory negligence. As we have noted, two of the causes of action were based on the common law and two on a Massachusetts statute. The court, without distinguishing between them, charged that petitioners had the burden of proving contributory negligence. To this petitioners excepted, likewise without distinguishing between the different causes of action. And again without making any such distinction, peti-

tioners requested the court to charge that the burden was on respondent. This was refused and an exception noted.

Respondent contends, in the first place, that the charge was correct because of the fact that Rule 8 (c) of the Rules of Civil Procedure makes contributory negligence an affirmative defense. We do not agree. Rule 8 (c) covers only the manner of pleading. The question of the burden of establishing contributory negligence is a question of local law which federal courts in diversity of citizenship cases (*Erie R. Co.* v. *Tompkins,* 304 U. S. 64) must apply. *Cities Service Oil Co.* v. *Dunlap,* 308 U. S. 208; *Sampson* v. *Channell,* 110 F. 2d 754. And see *Central Vermont Ry. Co.* v. *White,* 238 U. S. 507, 512.

Secondly, respondent contends that the courts below applied the rule of conflict of laws which obtains in New York. So far as the causes of action based on the Massachusetts statute are concerned, we will not disturb the holding below that as a matter of New York conflict of laws which the trial court was bound to apply (*Klaxon Co.* v. *Stentor Co.,* 313 U. S. 487) petitioners had the burden of proving contributory negligence. That ruling was based on *Fitzpatrick* v. *International Ry. Co.,* 252 N. Y. 127, 169 N. E. 112, which involved an action brought in New York under a statute of the Province of Ontario. That statute gave a plaintiff in a negligence action, though guilty of contributory negligence, a recovery if the defendant was more negligent, the damages being proportioned to the degree of fault imputable to the defendant. The New York Court of Appeals held that the New York courts were justified in applying the Ontario rule, growing out of the statute, that the burden was on the defendant to show contributory negligence. The Massachusetts statute on which two of the present causes of action were founded makes a railroad corporation liable for its neglect in giving certain signals. It provides that tort damages for injuries or death from collisions at crossings may be

recovered where such neglect "contributed" to the injury, "unless it is shown that, in addition to a mere want of ordinary care, the person injured . . . was, at the time of the collision, guilty of gross or wilful negligence, or was acting in violation of the law, and that such gross or wilful negligence or unlawful act contributed to the injury." Mass. Gen. L. (1932) c. 160, § 2342. That statute, like the Ontario statute, creates rights not recognized at common law. *Brooks* v. *Fitchburg & L. St. Ry. Co.*, 200 Mass. 8, 86 N. E. 289; *Duggan* v. *Bay State Street Ry. Co.*, 230 Mass. 370, 381–382, 119 N. E. 757; *Sullivan* v. *Hustis*, 237 Mass. 441, 446, 130 N. E. 247; *Lewis* v. *Boston & Maine Railroad*, 263 Mass. 87, 91, 160 N. E. 663. And in actions under it the burden of proving contributory neglicence is on the defendant. *Manley* v. *Boston & Maine Railroad*, 159 Mass. 493, 34 N. E. 951; *Phelps* v. *New England R. Co.*, 172 Mass. 98, 51 N. E. 522; *McDonald* v. *New York C. & H. R. R. Co.*, 186 Mass. 474, 72 N. E. 55; *Kenny* v. *Boston & Maine Railroad*, 188 Mass. 127, 74 N. E. 309. And see Mass. Gen. L. (1932) c. 231, § 85. Moreover, the measure of damages for death is "the sum of not less than five hundred nor more than ten thousand dollars, to be assessed with reference to the degree of culpability of the" railroad. Mass. Gen. L. (1932) c. 229, § 3. We are referred to no New York decision involving the point. The propriety of applying the rule of the *Fitzpatrick* case to the causes of action based on the Massachusetts statute may be arguable. But it is not the type of ruling under *Erie R. Co.* v. *Tompkins, supra,* which we will readily disturb. Where the lower federal courts are applying local law, we will not set aside their ruling except on a plain showing of error.

The question which is raised on the common law counts is more serious. The court below did not distinguish between the conflict of laws rule in a case like the *Fitzpatrick* case and the rule which apparently obtains in cases where

the foreign cause of action is not founded on such a statute. It was intimated in the *Fitzpatrick* case (252 N. Y. p. 135) and stated in other cases in New York's intermediate appellate courts (*Wright* v. *Palmison*, 237 App. Div. 22, 260 N. Y. S. 812; *Clark* v. *Harnischfeger Sales Corp.*, 238 App. Div. 493, 495, 264 N. Y. S. 873) that in the latter situation the burden of proving freedom from contributory negligence is on the plaintiff. *Fitzpatrick* v. *International Ry. Co., supra*, p. 134. But we do not reverse and remand the case to the court below so that it may examine and make an appropriate application of the New York law on the common law counts, for the following reason: As we have noted, petitioners in their exceptions to the charge given and in the requested charge did not differentiate between the causes of action based on the Massachusetts statute and those on the common law. Even if we assume that the charge on the latter was erroneous, we cannot say that the charge was incorrect so far as the statutory causes of action were concerned. Likewise we must assume that it would have been error to give the requested charge on the statutory causes of action even though we accept it as the correct charge on the others. Under these facts a general exception is not sufficient. In fairness to the trial court and to the parties, objections to a charge must be sufficiently specific to bring into focus the precise nature of the alleged error. Where a party might have obtained the correct charge by specifically calling the attention of the trial court to the error and where part of the charge was correct, he may not through a general exception obtain a new trial. See *Lincoln* v. *Claflin*, 7 Wall. 132, 139; *Beaver* v. *Taylor*, 93 U. S. 46, 54–55; *Mobile & Montgomery Ry. Co.* v. *Jurey*, 111 U. S. 584, 596; *McDermott* v. *Severe*, 202 U. S. 600, 611; *Norfolk & W. Ry. Co.* v. *Earnest*, 229 U. S. 114, 122; *Pennsylvania R. Co.* v. *Minds*, 250 U. S. 368, 375. That long standing rule of federal practice is as applicable in this

type of case as in others. That rule cannot be avoided here by reason of the requested charge. For, as we have said, it was at most only partially correct and was not sufficiently discriminating.

*Affirmed.*