Beverly FAYSON, Plaintiff,

v.

John SCHMADL, et al., Defendants.

Civ. A. No. 87–1975.

United States District Court,
District of Columbia.

Aug. 24, 1988.

Kerry Alan Scanlon, Washington Lawyers Committee for Civil Rights Under Law, George T. Manning, Jones, Day, Reavis & Pogue, Washington, D.C., for plaintiff and counter-defendant Beverly Fayson.

Jane L. Dolkart, Dolkart & Zavos, Washington, D.C., for defendant and counter-claimant John Schmadl.

Stewart S. Manela, Henry Morris, Jr., Arent, Fox, Kintner, Plotkin & Kahn, Paul R. Webber, IV, Abraham Greenstein, Richard W. Luchs, Greenstein, Delorme & Luchs, P.C., Washington, D.C., for defendant Shannon & Luchs Co., a Delaware Corp.

## OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Presently pending before the Court is motion *in limine* or, in the alternative, for a continuance of the trial now scheduled to commence on October 17, 1988 filed by defendant Shannon & Luchs Company (S & L). For the reasons articulated below, this motion will be denied.

### I.

Plaintiff Beverly Fayson brought this action against S & L and one of its real estate agents, John Schmadl, alleging that she had been discriminated against on the basis of her race (black) when she expressed interest in purchasing a condominium in May 1985. Prior to instituting this suit,

Fayson filed a complaint of housing discrimination against Schmadl with the Department of Housing and Urban Development (HUD). The complaint was assigned to Stephen Margolis, an Equal Opportunity Specialist in HUD's Office of Fair Housing and Equal Opportunity. After conducting an investigation, Margolis prepared a Final Investigative Report (Report) which concluded that Schmadl had refused to deal with Fayson and offer his services to her because of her race. *See* Exhibit A to Defendant's Motion. In her pretrial brief, Fayson has indicated that she intends to introduce the Report into evidence at trial. Because it has not been able to depose Margolis, S & L now seeks to exclude the Report or delay the trial until the deposition of Margolis can occur.

## II.

■ Federal Rule of Evidence 803(8)(C) exempts from the hearsay rule

> [r]ecords, reports, statements or data compilations, in any form, of public offices or agencies, setting forth ... factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

According to its drafters, the Rule is based on "the assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record." Rule 803(8)(C) advisory committee's note. Thus, in considering whether an official report should be admitted under the Rule, a district court should "start from the premise that such reports of investigations are presumed to be reliable." *In re Japanese Electronic Products Antitrust Litigation,* 723 F.2d 238, 265 (3d Cir.1983), *rev'd on other grounds sub nom. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).[1] The Rule does state, however, that official reports may be excluded when "the sources of information or other circumstances indicate lack of trustworthiness." To make this determination, a court should examine the following factors:

> (1) the timeliness of the investigation, ... (2) the special skill or experience of the official, ... (3) whether a hearing was held and the level at which conducted, ... [and] (4) possible motivational problems suggested by *Palmer v. Hoffman,* 318 U.S. 109 [63 S.Ct. 477, 87 L.Ed. 645] (1943).

Rule 803(8)(C) advisory committee's note. With this guidance in mind, the Court addresses the parties' contentions.

S & L's argument is straightforward. It begins by noting that a party opposing introduction of an official report must be given the opportunity to present evidence refuting the agency's conclusions or pointing out deficiencies in the report. *See, e.g., McClure v. Mexia Independent School District,* 750 F.2d 396, 400 (5th Cir.1985). It next observes that the reliability of the Report cannot be determined because S & L has not had an opportunity to depose Mr. Margolis. The Report, it concludes, should therefore not be introduced at trial.

■ S & L's syllogism does not withstand careful analysis. At the outset, the Court would note that the major premise of S & L's argument—that the defendant is entitled at trial to scrutinize the circumstances surrounding the preparation of an official report—is unassailable. The minor premise advanced by S & L, however, must be rejected. Although it appears that S & L has been unable to take the deposition of Mr. Margolis, that fact alone does not compel exclusion of the Report that he prepared.

For one thing, S & L has had ample opportunity to probe the reliability of the Report. S & L has already taken the deposition of Mr. Margolis' supervisor, Randolph Cross, a HUD official who has considerable knowledge of the circumstances pertaining to the preparation of the Report. Cross stated in his testimony that Margolis

---

1. The advisory committee's note observes that the Rule "assumes admissibility in the first instance but with ample provision for escape if sufficient negative factors are present."

is "a very experienced investigator" who has spent approximately 14 years investigating housing complaints. Exhibit B to Plaintiff's Opposition at 15. Cross noted that he outlined the course of the investigation with Margolis *prior* to its initiation, that he reviewed and signed the Report after it was drafted by Margolis, that he believed that all procedures had been correctly observed and that he supported Margolis' finding of probable cause with respect to racial discrimination. *Id.* at 7, 13, 15, 17, 20. At this deposition, S & L could have—but chose not to—explore any deficiencies or biases in the Report. Moreover, depositions were also taken of many of the witnesses—including defendant Schmadl—who were interviewed by Mr. Margolis in the course of his investigation. Thus, S & L's contention that it will be "completely unable" to assess the reliability of the Report without the deposition of Mr. Margolis, Motion at 9, must be rejected, for it has had sufficient opportunity to do so.[2]

In any event, nothing on the face of the Report indicates trustworthiness problems. The investigation lasted for one and a half months. Mr. Margolis contacted all of the crucial figures in the case, interviewing Fayson, Schmadl, Carolyn Hill (who was present during the alleged acts of discrimination), two S & L officials and a prospective white buyer of the property involved. He set forth his factual findings and conclusions, which were reviewed by two HUD supervisors. In short, there are no glaring gaps in how Mr. Margolis conducted the investigation that would give one cause for concern.

S & L's arguments concerning the trustworthiness of the Report are unconvincing. Citing Randolph Cross' testimony that Margolis' illness (cerebral palsy) had been ongoing for the last 15 years, *see* Exhibit 1 to Reply Brief at 25, S & L maintains that it is "highly likely" that the health problems may have adversely impacted on the investigation. In actuality, however, Cross stated that, although Margolis had physical ailments, "there's nothing wrong with his mind then or now." *Id.* S & L next points to testimony by Beverly Hord, another HUD investigator, that it claims undermines the credibility of the Report. None of Hord's statements, however, compels the conclusion that the Report is so unreliable that it should not be admitted as evidence in this case. Moreover, S & L has already taken Hord's deposition and intends to introduce deposition transcripts of these statements at trial; her countervailing evidence will therefore be presented to the jury for its consideration.[3] Finally, S & L refers to a number of "discrepancies and ambiguities" in the Report that should bar its admission. *See* Reply Brief at 5–8. Even if true, the examples cited by S & L are just that—discrepancies and ambiguities. Rule 803(8)(C), however, only precludes introduction of official reports that are "untrustworthy." In common usage, a thing is "trustworthy" when it is "worthy of confidence" or "dependable." Webster's Third New International Dictionary 2457 (1968). This meaning is reflected in the Advisory Committee notes, which direct a court to examine factors such as timeliness of preparation, skill of the author, the presence of a hearing, and

---

**2.** In addition, the Court is aware of no rule barring admission of an official report when its author has not been deposed. The sole authority cited by defendant in urging that position is Judge Weinstein's treatise on evidence, which states that "[i]n the usual case, therefore, the opponent of the official report will have an *opportunity prior to trial to investigate the au*thor's qualifications." 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 908(8)[03] at 803–250 (1987). This statement, unsupported by case citation, does not compel exclusion of the Report. For one thing, it does not express an absolute; it only requires an "opportunity" to investigate qualifications of the author in the "usual" case. But even accepting Judge Weinstein's formulation, S & L was, as noted *infra*, given the opportunity to depose Mr. Margolis but could not in fact consummate the deposition. Finally, notwithstanding those problems, S & L did have a chance to examine Margolis' qualifications through the testimony of the HUD officials who knew and worked with him. Their depositions, however, demonstrated that Margolis was properly qualified to undertake Fayson's investigation.

**3.** S & L could have—but has decided not to—call Hord as a witness to present live testimony to the jury. *See* Pretrial Brief at 13–18.

whether the Report was prepared in anticipation of litigation. None of infirmities cited by S & L, however, relate to "trustworthiness." Rather, they go to the *weight* that the Report should be given at trial, and S & L will be free to highlight these problems to the jury, whose function it is to decide how much importance should be attached to the Report.[4]

Finally, S & L's inability to take the Margolis deposition is in no way attributable to Fayson. Rather, it appears that Judge McGlynn of the Eastern District of Pennsylvania—the court with jurisdiction over Mr. Margolis—originally allowed S & L to issue a subpoena to take his deposition. *See* Exhibit B to Defendant's Motion. Before S & L could do so, HUD moved to quash the subpoena, noting that Margolis' medical condition could be jeopardized. *Id.* Exhibit C. In response, Judge McGlynn ordered that the subpoena be quashed. *Id.* Exhibit C. Thus, factors beyond the control of Fayson, S & L and this Court have led to the present situation, and there is no reason to penalize plaintiff for an unavoidable situation that she did not bring about.[5]

### III.

In sum, the Court concludes that S & L has not overcome the presumption of reliability that attaches to official reports under Fed.R.Evid. 803(8)(C). *See In re Japanese Electronic Products Antitrust Litigation, supra.* Accordingly, the HUD Report shall be admissible at trial. As noted above, however, this disposition in no way prevents S & L from placing before the jury relevant evidence showing deficiencies in the Report or from arguing that the Report should be entitled to little weight.[6]

For these reasons, it is

ORDERED that defendant's motion in limine or, in the alternative, for a continuance of trial, be and it hereby is denied.

---

4. S & L also argues that the Report should be excluded because it was not a party to the HUD proceedings. Motion at 10–12. If that were so, however, few official reports would be admissible at trial and Rule 803(8)(C), perhaps in recognition of that fact, imposes no such requirement. In any event, the basis for this objection lacks merit. S & L asserts that, under 42 U.S.C. § 3610, it was not given a copy of the Fayson's administrative complaint at the outset of the investigation and that it was therefore deprived of an opportunity to file an answer to her charges. Because, however, the complaint named Schmadl (and not S & L) as the respondent, 42 U.S.C. § 3610 does not apply. Moreover, S & L admits that it was notified of the filing of the complaint by HUD shortly after it was filed. Motion at 11 n. 4.

5. In fact, plaintiff *cooperated* with attempts to depose Mr. Margolis. Fayson did not oppose S & L's numerous requests for extensions of the discovery period and in fact agreed to a Consent Order granting S & L leave to take Margolis' deposition.

6. S & L has also moved in the alternative for a new trial date. Given the late date at which this motion was filed, the Court indicated at the pretrial conference held on August 3, 1988 that a continuance would not be granted. Because there is no reason to alter that determination now, S & L's alternative motion will be denied.