**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

TOKIO MARINE & FIRE INSURANCE
COMPANY, LTD.,
Plaintiff-Appellant,

v.

No. 98-1050

NORFOLK & WESTERN RAILWAY
COMPANY; NORFOLK SOUTHERN
RAILWAY COMPANY,
Defendants-Appellees.

TOKIO MARINE & FIRE INSURANCE
COMPANY, LTD.,
Plaintiff-Appellee,

v.

No. 98-1077

NORFOLK & WESTERN RAILWAY
COMPANY; NORFOLK SOUTHERN
RAILWAY COMPANY,
Defendants-Appellants.

Appeals from the United States District Court
for the Middle District of North Carolina, at Winston-Salem.
Frank W. Bullock, Jr., Chief District Judge.
(CA-94-535-6)

Argued: October 28, 1998

Decided: January 14, 1999

Before NIEMEYER and MICHAEL, Circuit Judges, and BOYLE,
Chief United States District Judge for the Eastern District of
North Carolina, sitting by designation.

_____

Reversed in part and affirmed in part by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Michael Wayne Lodwick, PORTER, GROFF & LODWICK, L.C., Long Beach, California, for Appellant. James Richard Saintsing, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, L.L.P., Greensboro, North Carolina, for Appellees. **ON BRIEF:** Ellis B. Drew, III, WOMBLE, CARLYLE, SANDRIDGE & RICE, P.L.C., Winston-Salem, North Carolina, for Appellant. Lennox Polk McLendon, Jr., Reid L. Phillips, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, L.L.P., Greensboro, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Tokio Marine & Fire Insurance Co., Ltd. ("Tokio Marine") insured shipments of Honda automobiles that were transported from the factory by Norfolk & Western Railway Co. and Norfolk Southern Railway Co. (collectively "Norfolk"). A number of cars were damaged in transit, and Tokio Marine paid Honda's claim for the damaged cars. Norfolk partially reimbursed Tokio Marine but claimed an offset for the salvage value of the damaged cars. The insurance company then sued to recover the amount that Norfolk withheld. At trial Norfolk offered evidence regarding an appraisal of scrapped cars, and a jury ruled against Tokio Marine based on that evidence. We now hold that this appraisal evidence was inadmissible. Finding no other evidence of the value of these cars, we reverse.

2

Norfolk asserts a cross-appeal regarding damage to a separate shipment of cars. On that claim, the district court excluded another appraisal report and granted judgment as a matter of law for Tokio Marine. We agree with the exclusion of that report and affirm on the cross-appeal.

I.

Norfolk transports new cars by rail for American Honda Motor Co., Inc. ("Honda"). On four separate occasions (referred to as Claims 1, 2, 3, and 4), Norfolk damaged Honda cars while shipping them. On Claim 1, only one car was damaged. Eleven and 16 cars respectively were damaged on Claims 2 and 3. Claim 4 was by far the most serious; 180 cars were damaged when the train carrying them derailed. Of these 180 cars, 45 could be repaired but 135 were declared constructive total losses due to severe structural damage. Honda destroyed the 135 constructive total losses from Claim 4 and all of the damaged cars from the other three accidents. It then filed a claim with Tokio Marine, its insurance company.

Tokio Marine paid Honda's claim for the damaged cars, covering 90 percent of the actual dealer cost for each car that was declared a constructive total loss. Tokio Marine, through subrogation, then sought to recover this loss from Norfolk. Norfolk admitted liability, but disputed the amount of damages. It contended that Honda could have mitigated its damages by releasing for salvage usable parts that could be stripped from the scrapped cars.[1] Norfolk therefore obtained appraisals of the damaged cars from two auto salvage companies and reduced its payment to Tokio Marine by the average value of the two appraisals. Tokio Marine thereafter sued Norfolk for the amount of this offset.

At trial the district court granted judgment as a matter of law for Tokio Marine on Claim 2, pursuant to Fed. R. Civ. P. 50(a). It sent the remaining claims to a jury, which returned verdicts for Norfolk on Claims 1, 3, and 4. However, the court set aside the jury verdicts on

_____

[1] We express no opinion as to whether Norfolk is entitled to mitigate damages in this way. In any event, it was Norfolk's burden to prove the value of salvageable parts.

Claims 1 and 3, ordering a new trial.**2** It let stand the jury verdict for Norfolk on Claim 4, which Tokio Marine now appeals. Norfolk cross-appeals from the directed verdict on Claim 2.

Tokio Marine's appeal on Claim 4 focuses on the admissibility of evidence regarding the appraised value of the damaged cars. At trial a Norfolk employee testified that the railroad obtained two appraisals, from Deer Creek Auto & Truck Parts ("Deer Creek") and GAL Auto. He explained that Norfolk derived its asserted salvage value for the cars by calculating the average of the totals submitted by the two appraisers. This average salvage value, which Norfolk claimed should be offset as mitigation of Tokio Marine's damages, totaled $644,222.80.

The district court excluded as hearsay Norfolk's calculation of the salvage value average. Furthermore, Norfolk failed to offer into evidence the appraisal by GAL Auto. Thus, the only evidence as to the salvage values of the cars was the appraisal by Deer Creek. Jack Clark, the owner of Deer Creek, prepared this appraisal with the assistance of his grandson, Brian Wisecup. Because Clark was unable to appear at trial, Wisecup testified about the preparation of the appraisal. Based on this testimony, the court admitted into evidence Deer Creek's appraisal report, rejecting a hearsay objection by Tokio Marine. The court held that the Deer Creek report could be admitted under either of two theories: (1) that the appraisal was prepared jointly by Clark and Wisecup and thus represented Wisecup's own expert opinion or (2) that the report was a business record of Deer Creek falling within the hearsay exception of Fed. R. Evid. 803(6). We reject both grounds for admitting the Deer Creek appraisal into evidence and believe that this report should have been excluded at trial. Since there was no other evidence of the possible salvage value of the cars, the district court erred in sending the case to a jury. The court should have granted Tokio Marine's motion for judgment as a matter of law.

_____

**2** The district court stayed the new trial, pending the outcome of this appeal.

4

II.

First, we reject, as clearly erroneous, the district court's factual finding that the Deer Creek appraisal report represented the opinion of Wisecup. Because the appraisal represented the opinion of Clark, who did not testify at trial, the report was hearsay.

A careful review of the evidence conclusively reveals that the report represented only the opinion of Jack Clark. It is apparent that although Wisecup assisted Clark in the preparation of the appraisal and occasionally offered his input, the ultimate conclusions as to the salvage value of the cars represented the views of Clark alone. In his deposition, which was read to the jury, Wisecup was asked who appraised the vehicles, and he answered as follows:

> My grandfather and I did both. It was basically - he was basically the one that was doing it. And basically what I was, he was asking me my opinion on a few things. But these were basically his bids. You know, I would say that they were both of our bids, but, you know, he was the one who had the say-so on the bid itself.

Another exchange during the deposition concerned the handwritten notes taken by Clark as he examined the cars:

> Q: "Yeah. Well, the handwritten notes on Pages 2, 3 and 4 of Exhibit 1---"
>
> A: "Oh, who wrote those?"
>
> Q: "Yeah."
>
> A: "My grandfather, Jack Clark."

* * *

> Q: "So, now did he prepare these handwritten notes, Pages 2, 3 and 4 of Exhibit 1, based on information you gave him ---"

5

A: "No. This was---"

Q: "---on your appraisal of the cars?"

A: "This was his information."

When Wisecup testified at trial, Tokio Marine's questioning returned to this point:

Q: Mr. Wisecup, if you will look at Defendant's Exhibit 12, Pages 2, 3 and 4 - it's a four-page document, I believe. If you'll look at Pages 2, 3 and 4, sir, isn't it true that these numbers were not written on these pages by you?

A: Right.

Q: You did not write them?

A: Exactly.

Q: And isn't it also true that these numbers are not bids that you have decided on?

A: That I decided on?

Q: Yes.

A: My grandfather and I did.

Isn't it true that your grandfather decided on these numbers, and that he only occasionally asked you for your input on them?

A: Yes, yes.

Q: So these numbers, in fact, are the ones decided by your grandfather?

A: Yes.

6

Wisecup's position in his deposition and at trial was the same. He began by saying that the appraisal numbers were his grandfather's and also his own. Each time he backed down completely when pressed. In the end, he admitted that his grandfather (Clark) was the one who decided the appraisal numbers. Thus, the appraisal value listed on the report was only the opinion of Clark and did not represent Wisecup's opinion as to the value of the cars. We recognize that Wisecup occasionally offered input during the appraisal process and that Clark might have considered Wisecup's views with regard to a few of the 135 damaged cars. However, it cannot be said that the appraisal report as a whole represents Wisecup's opinion. It does not.

Since the report presents the opinion of someone who did not testify at trial, and it was offered as evidence of the appraisal value of the damaged cars, it was hearsay. Turning to the question of whether the report was still admissible into evidence, we reject both theories relied upon by the district court. We conclude that the report should not have been admitted as an expert opinion. We also disagree with the district court's alternative theory for admitting it under the business records exception to the hearsay rule.

A.

Rule 702 of the Federal Rules of Evidence provides that if specialized knowledge "will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The Supreme Court has noted, in the context of scientific experts, that a trial judge must "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993); see also Berry v. City of Detroit, 25 F.3d 1342, 1349, 1351 (6th Cir. 1994). No such "reliable foundation" was offered for the appraisal report in this case. The report undoubtedly presents the opinions of Jack Clark in the form of his appraisal of the damaged cars. However, Norfolk failed to offer any evidence to qualify Clark as an expert, despite the requirement of Rule 702 that an expert must be qualified based on "knowledge, skill, experience, training, or education." Fed. R. Evid.

7

702. Norfolk therefore failed to lay the necessary foundation for the use of expert opinion evidence.

Even if Clark were qualified as an expert, the report was inadmissible hearsay. Reports stating an expert opinion "are not admissible without the preparer being present in court to testify as to his qualifications as an expert and to be cross-examined on the substance." Forward Communications Corp. v. United States, 608 F.2d 485, 511 (Ct. Cl. 1979). Because Clark did not testify, Tokio Marine had no opportunity to question him about either his methodology for appraising the cars or the factual basis for his opinions. It did question Wisecup as to what he saw Clark doing when the two men examined the cars. However, since the final valuation opinion was exclusively Clark's, the cross-examination of Wisecup could reveal nothing about the mental processes by which Clark reached his opinion.

The district court, through its own questioning, tried to determine whether Wisecup concurred in Clark's appraisal. After Wisecup was cross-examined, the court questioned him further:

> THE COURT: Did the two of you agree on these figures that are on this Exhibit 12 on all four of these pages?
>
> THE WITNESS: Right. He got my opinion on some of them, but it's basically his opinion.
>
> THE COURT: All right. Do you agree with his opinion?
>
> THE WITNESS: Yes. I mean, I - I would have to look at every car again, but yes. I mean, if they are documented here, yes.
>
> THE COURT: Did you agree with him at the time?
>
> THE WITNESS: Yes, yes.

Wisecup thus conceded that the opinion was Clark's and said that he agreed with that opinion. However, one expert may not give the opinion of another expert who does not testify. Weaver v. Phoenix

8

Home Life Mut. Ins. Co., 990 F.2d 154, 159 (4th Cir. 1993); 6816.5 Acres of Land v. United States, 411 F.2d 834, 839-40 (10th Cir. 1969). The hearsay quality of a report may not be cured merely by having another expert testify that he agrees with its conclusions. Wisecup may have been an expert in his own right who could have made his own, independent, assessment of the values of the cars. However, Clark's hearsay opinion could not be admitted on the basis of Wisecup's statement that he agreed with its conclusions. The district court therefore erred in allowing Norfolk to introduce Clark's appraisal report via Wisecup's testimony.

B.

The district court held in the alternative that the Deer Creek (Clark's) appraisal report was admissible under the business records exception to the hearsay rule. The business records exception provides that a report, although hearsay, is admissible if it was "made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make [the report]." Fed. R. Evid. 803(6). This rule recognizes the "probability of trustworthiness of records because they were routine reflections of the day to day operations of a business." Palmer v. Hoffman, 318 U.S. 109, 113-14 (1943). In determining admissibility, courts must look to "the character of the records and their earmarks of reliability acquired from their source and origin and the nature of their compilation." Id. at 114 (citation omitted).

The Deer Creek appraisal report was not a record of "regularly conducted business activity" and lacks the indicia of reliability necessary for admission under the business records exception. Deer Creek's business was buying wrecked motor vehicles and dealing in used auto parts. Although Deer Creek may examine wrecked vehicles and make decisions as to their value on a regular basis, it does so in the context of making bids to buy those vehicles. Here, however, Deer Creek was simply giving an appraisal opinion for a fee and had no expectation of actually buying the damaged Hondas. Wisecup explained in his deposition (read at trial):

> Q: "Okay. So it was your understanding, in any event, you were going to bid the cars, but that you weren't going to be

9

able to take title to the cars; that someone, presumably the manufacturer, I guess, was not going to let title out to either Norfolk Southern or you, correct?"

A: "Right, which makes it basically an appraisal at that time."

* * *

Q: "You understood when you were appraising these vehicles that you weren't going to be able to acquire them even though you - you were going to put a bid in perhaps, but that you weren't going to be able to actually buy the cars, correct?"

A: "Right."

The appraisals or "bids" submitted by Deer Creek therefore were not bona fide offers to buy the damaged cars for a stated price. Instead, they were merely estimates of the cars' value. As such, they lacked the inherent reliability of a real bid that reflects what a market actor is actually willing to pay. Because the appraisal lacked this inherent reliability, there was no way to evaluate it on its face. It was necessary for the opposing side to have the opportunity to cross-examine the person who actually made the appraisal. The appraisal therefore could not be admitted under the business records exception to the hearsay rule.

III.

Norfolk cross-appeals the district court's grant of judgment as a matter of law for Tokio Marine on Claim 2. The court had excluded an appraisal report for those damaged cars (prepared by Gray & Taylor, Inc.), holding it to be inadmissible hearsay. Finding no other evidence as to the salvage value of those cars, the court directed a verdict for Tokio Marine on that claim. The person who prepared the appraisal for Claim 2 was also unavailable to testify at trial. Norfolk therefore attempted to introduce his report through the testimony of his supervisor. The supervisor testified that the appraisal was made

10

and kept in the ordinary course of business. Norfolk asserted that, although hearsay, this report should be admitted under the business records exception. See Fed. R. Evid. 803(6). The district court properly excluded this appraisal as hearsay. We therefore affirm on the cross-appeal, adopting the reasoning of the district court. See Tokio Marine & Fire Ins. Co., Ltd. v. Norfolk and Western Ry. Co., No. 6:94CV535, Trial Tr. at III-50 (M.D. N.C. Sept. 6, 1996).

IV.

In conclusion, Norfolk's only evidence of the salvage value of the vehicles in Claim 4 was Deer Creek's appraisal report. Without that report, there was a complete failure of proof at trial by Norfolk, and the district court erred in denying judgment as a matter of law for Tokio Marine. See Stastny v. Southern Bell Tel. and Tel. Co., 628 F.2d 267, 281 (4th Cir. 1980). We therefore reverse as to Claim 4.

The appraisal report on Claim 2 was properly excluded. The district court was correct to grant judgment as a matter of law for Tokio Marine on Claim 2 because there was no evidence of the salvage value of those cars. Thus, on Norfolk's cross-appeal on Claim 2, we affirm the judgment of the district court.

REVERSED IN PART AND AFFIRMED IN PART

11