CORRIGAN, J., Concurring.
I fully concur in the majority’s result. However, in concluding that the report of analyst Jorge Peña is not testimonial, I would take a different approach. Rather than focus on the formality issue to resolve this case, I would ground the analysis in the primary purpose prong. Applying that prong, I conclude that most of the annotations in Peña’s report qualify as conventional business records. As we explain more fully below, the annotations are not testimonial hearsay under Crawford v. Washington (2004) 541 U.S. 36 [158 L.Ed.2d 177, 124 S.Ct. 1354] (Crawford) and its progeny.
In Crawford, the majority observed that, at common law, “[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records . . . .” (Crawford, supra, 541 U.S. at p. 56.) Justice Scalia, writing for the majority, did not further explain that characterization. However, subsequent authority elucidates why, in most cases, that observation is accurate.
*588 As the majority here explains, to qualify as testimonial a statement must be both sufficiently formal and made for a specific primary purpose. (Maj. opn., ante, at p. 582.) The majority additionally points out that consensus has yet to emerge among the high court justices on how, precisely, the primary purpose is to be defined. (Id. at p. 582.) Even in the face of that ambiguity, the majority of notations in Pefia’s report were simple, nontestimonial business records.[1]
In Melendez-Diaz v. Massachusetts (2009) 557 U.S. 305 [174 L.Ed.2d 314, 129 S.Ct. 2527] (Melendez-Diaz), Justice Scalia, writing for the majority, made the point that not all documents produced by a business fall within the business records exception. He cited Palmer v. Hoffman (1943) 318 U.S. 109 [87 L.Ed. 645, 63 S.Ct. 477] (Palmer) as a case that makes this distinction clear. In Palmer, a railroad employee wrote an accident report as part of his job. Justice Scalia noted that the accident report “did not qualify as a business record because, although kept in the regular course of the railroad’s operations, it was ‘calculated for use essentially in the court, not in the business.’ [Citation.]” Melendez-Diaz, supra, 557 U.S. at p. 321.)[2]
The Melendez-Diaz majority contrasted the railroad accident report in Palmer, supra, 318 U.S. 109, with records “prepared for the administration of an entity’s affairs, and not for use in litigation,” citing as examples cases involving admission of a ship’s muster book, a vestry book, and a prison logbook. (Melendez-Diaz, supra, 557 U.S. at p. 321, fn. 7.)
*589 The Melendez-Diaz majority explained that “[b]usiness and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity’s affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial.” (Melendez-Diaz, supra, 557 U.S. at p. 324.)
Applying those concepts to the chain of custody logsheet, it is clear that several of the notations are nontestimonial. Entries of the lab number assigned to each sample and the dates on which the sample was received and tested are made “for the administration of an entity’s affairs.” (Melendez-Diaz, supra, 557 U.S. at p. 324.) The laboratory could not conduct its business were it unable to identify samples and track them through the course of their processing. Records of routine tracking and foundational information are kept by the business to facilitate its ongoing organization and operation.
Some notations in business records may ultimately prove relevant at a trial. But their mere relevance does not make them testimonial. Any number of nontestimonial statements, made in a variety of contexts, may ultimately become relevant in a case. Indeed, were a statement irrelevant it would be inadmissible regardless of any Sixth Amendment bar.
Admission of a relevant business record does not violate the confrontation clause unless its contents qualify as a testimonial statement. The Supreme Court cases counsel that it is the formality of the statement and the primary purpose for which it was made that resolve that question. A notation made for the primary purpose of “the administration of an entity’s affairs” (Melendez-Diaz, supra, 557 U.S. at p. 324) is not testimonial.
Other entries on the chain of custody logsheet are arguably more testimonial in character, specifically the notation that the sample was received in a sealed condition and the recordation of the specific blood-alcohol level of defendant’s sample. These records are, arguably, created for later use at trial. If the notation of the sealed condition had been excluded, the prosecution would not have been able to establish that fact. However, such an omission would have gone to the weight of the evidence, not its admissibility. The expert witness would still have been able to lay sufficient foundation for the machine-generated graph and explain its significance. The sealed condition of the sample was never disputed. On the facts of this case, the admission of the sealed-condition notation was harmless.
The entry reflecting that defendant’s sample produced a blood-alcohol result of 0.09 percent also appears to be a record for later use at trial. However, as the majority points out, the printout produced by the gas *590 chromatograph machine, which was not hearsay, was properly admitted and explained by the expert testimony of criminalist Willey, who was available for cross-examination. Thus, admission of that portion of the record was also harmless.
The general rule articulated in Crawford, supra, 541 U.S. 36, remains operative. A hearsay statement that otherwise satisfies a statutory exception may be admitted against a criminal defendant without violating the confrontation clause as long as the statement is not “testimonial.” Drawing on the Supreme Court’s discussions in Crawford and Melendez-Diaz, we may safely conclude that some statements in business records may be admitted in a criminal trial if they are made primarily “for the administration of an entity’s affairs” rather than “proving some fact at trial.” (Melendez-Diaz, supra, 557 U.S. at p. 324.) Courts must take care in honoring that distinction. A particular statement made in a document that might otherwise qualify as a business record may still be testimonial and therefore barred by the confrontation clause. But if a hearsay statement is nontestimonial, its admission does not implicate the Sixth Amendment’s confrontation requirement.
Baxter, J., Werdegar, J., and Chin, J., concurred.

 Analyst Peña worked in the San Diego Sheriff’s Department crime laboratory. Evidence Code section 1270 defines “a business” as including governmental activity. Evidence Code section 1271 states a writing is not inadmissible under the hearsay rule if: “(a) The writing was made in the regular course of a business; H] (b) The writing was made at or near the time of the act, condition, or event; H] (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and [f] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness.”

 In making this point, Justice Scalia noted that documents kept in the regular course of business may ordinarily be admitted under the business records hearsay exception, but “not.. . if the regularly conducted business activity is the production of evidence for use at trial.” (Melendez-Diaz, supra, 557 U.S. at p. 321.) This sentence should not be read to mean that if the nature of the business is producing forensic evidence, as in the case of a testing laboratory, none of its records can ever qualify as a business record. Close reading of Melendez-Diaz reveals this to be a misinterpretation. In relying on Palmer, supra, 318 U.S. 109, Justice Scalia drew a distinction between those routine documents and notations created as part of the business’s direct operations, as opposed to documents written for the external purpose of defending a court case. Although the Palmer litigation report was written to serve the business’s interest, it was not the kind of routine document encompassed by the business records exception. It was not a document created as part of the day-to-day running of the railroad. The application of the Palmer distinction, focusing on why a document was produced, foreshadowed the “primary purpose” analysis later employed in Sixth Amendment confrontation cases.